735 P.2d 1161

**CITY OF LAS CRUCES,**
**Plaintiff-Appellee,**

v.

**Elizabeth BETANCOURT, and Henry J.**
**Baca, Defendants-Appellants.**

**No. 9585.**

Court of Appeals of New Mexico.

March 5, 1987.

Certiorari Denied April 9, 1987.

Ben A. Longwill, Asst. City Atty., Las Cruces, for plaintiff-appellee.

Angel L. Saenz, Las Cruces, for defendants-appellants.

## OPINION

GARCIA, Judge.

Defendants appeal the trial court's denial of their motions to suppress evidence. The two issues raised in this case are: 1) whether police roadblocks set up for the purpose of detecting and apprehending drunk drivers are constitutionally permissible in New Mexico; and, 2) if so, whether the particular roadblock operated by the Las Cruces police was constitutional as set up and operated. We affirm as to both defendants.

## FACTS

In the late night hours of December 31, 1985 and the early morning hours of January 1, 1986, a roadblock was set up and operated on Amador Avenue by the Las Cruces police. The purpose of the roadblock was to detect and apprehend drunk drivers. A supervisor in the Las Cruces police department advised the field officers conducting the roadblock of the operation and briefed them on the procedures to be utilized. The field officers were provided with a written outline of what to say to motorists who were stopped at the roadblock.

Officer Childress, along with two or three other officers, manned the roadblock. The officers were wearing reflective vests and carrying flashlights to stop approaching vehicles. There were no signs warning the public that a roadblock was in progress, but the scene was well lit, and the officers placed flares and pylons on the street leading up to the roadblock so that approaching cars were funneled into one lane. A temporary stop sign was posted at the roadblock. A marked patrol car and a BATmobile were also present at the scene. There was no evidence as to the degree of delay to motorists, but the parties stipulated that the detentions were brief. Advance publicity concerning sobriety roadblocks had

been disseminated to a local radio station for release.

Defendant Baca approached the roadblock between two and three o'clock on the morning of January 1, 1986. He stopped as requested by Officer Barreras. The officer looked inside the automobile and noticed two open beer cans. He also noticed that Baca's eyes were bloodshot and detected an odor of alcohol on his breath. The officer directed Baca to pull over to a side street, where a field sobriety and breath alcohol test were administered. Both tests indicated that Baca was under the influence of alcohol. He was arrested for driving while intoxicated.

Defendant Betancourt approached the roadblock a few minutes later. Officer Childress first noticed Betancourt's automobile at the stoplight east of the scene because the headlights of her vehicle were not turned on. As the vehicle approached the roadblock, its headlights were turned on, but Betancourt failed to stop when directed to by Officer Childress. Betancourt proceeded through the roadblock at a high rate of speed, almost hitting Officer Childress and another officer. Officer Childress radioed for assistance and the Betancourt vehicle was stopped a short time later. Betancourt was returned to the scene of the roadblock and arrested for driving while intoxicated.

Following denial of their motions to suppress, each defendant stipulated to driving with a blood-alcohol content greater than .10%.

**DISCUSSION**

Both defendants admitted they were driving while intoxicated when they were arrested. Nevertheless, they challenge the initial stops at the roadblock, arguing that they violate the fourth amendment's prohibition against unreasonable seizures. There is no question that in Baca's case the police did not possess any articulable facts upon which to base a reasonable suspicion or probable cause that he was driving while intoxicated prior to the initial stop. Accordingly, affirmance or reversal of his conviction depends entirely upon the constitutionality of the initial stop at the roadblock.

This is not true of Betancourt's appeal. The facts recited above show that Officer Childress possessed sufficient articulable facts upon which to stop her and probable cause to believe that she was driving while intoxicated. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Luna,* 93 N.M. 773, 606 P.2d 183 (1980). Accordingly, we affirm the denial of her motion to suppress evidence. *State v. Beachum,* 83 N.M. 526, 494 P.2d 188 (Ct.App.1972) (trial court will be affirmed on appeal if right for any reason).

**ISSUE NO. 1**

It is beyond question that stopping motorists for the purpose of detecting and apprehending drunk drivers constitutes a "seizure" under the fourth amendment. *E.g., Ingersoll v. Palmer,* 184 Cal.App.3d 1198, 221 Cal.Rptr. 659 (1985), *review granted,* 224 Cal.Rptr. 719, 715 P.2d 680 (1986); *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174 (1983); *Webb v. State,* 695 S.W.2d 676 (Tex.Cr.App.1985). *See also Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). The essence of the fourth amendment prohibition against unreasonable searches and seizures is to safeguard the privacy and security of individuals against arbitrary invasion by governmental officials by imposing a standard of reasonableness upon the exercise of those officials' discretion. *Deskins.* Thus, we hold that a roadblock is not per se violative of the fourth amendment when motorists are stopped without probable cause or a reasonable suspicion, but, rather, we believe the question of whether a particular roadblock violates the fourth amendment is basically one of reasonableness. *See People v. Bartley,* 109 Ill.2d 273, 93 Ill.Dec. 347, 486 N.E.2d 880 (1985); *People v. Scott,* 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1 (1984).

However, because "[n]o right is held more sacred * * * than the right of every individual to the possession and control of his own person, free from all restraint or interference," *Union Pacific Railway Co. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891), the reasonableness of any roadblock will be very closely scrutinized. In determining whether a roadblock is reasonable within the meaning of the fourth amendment, we must balance the gravity of the governmental interest or public concern served by the roadblock, the degree to which it advances these concerns and the severity of the interference with individual liberty, security, and privacy resulting from the roadblock. *Ingersoll; Bartley; Deskins; Webb.*

The need to deter, detect and remove drunk drivers from the public highways weighs heavily in favor of the state. *Ingersoll; Bartley; Deskins; Scott.* We need not recite the tragic figures involving the carnage caused by drunk drivers on our highways. *See Ingersoll; Bartley.* There can be no doubt that the threat posed by drunk drivers to public safety is so great that any reasonable efforts utilized by the state to deter, detect and remove them from the highways will be upheld by this court.

While no New Mexico cases have dealt with sobriety roadblocks, three cases have considered roadblock checks of driver's license and vehicle registration. *See State v. Bloom,* 90 N.M. 192, 561 P.2d 465 (1977); *State v. Bidegain,* 88 N.M. 466, 541 P.2d 971 (1975); *State v. Ruud,* 90 N.M. 647, 567 P.2d 496 (Ct.App.1977). In *State v. Bidegain,* no question of the validity of the stop was presented; therefore, the supreme court treated it as lawful. The supreme court in *State v. Bloom* simply held such stops are lawfully authorized pursuant to statutory authority. The supreme court was not called upon to consider the constitutional implications. In the same year that *State v. Bloom* was decided, this court did have occasion to examine the constitutionality of routine checks for license and vehicle registration. In *State v. Ruud,* we said that notwithstanding the statutory authority, such stops must comply with the constitutional requirements of the fourth amendment of the United States Constitution. While holding invalid stops based on random selection of motorists, we recognized the validity of "routine roadblocks set up in good faith to check registration certificates and driver's licenses." *Id.* 90 N.M. at 650, 567 P.2d at 499 (citation omitted).

All three of the cases just discussed were decided before *Delaware v. Prouse.* Because we discern no real difference between roadblocks to check for licenses and vehicle registration and roadblocks to check for sobriety, what we decide today simply adds to *State v. Rudd* the standard for determining the validity of roadblocks and guidelines useful in testing that standard. We take this opportunity to present eight guidelines that will be considered in determining the reasonableness of a roadblock. *See Ingersoll.* We would emphasize that we do not foreclose consideration of other relevant factors where appropriate and we hold that no one guideline is necessarily dispositive of the issue, so long as there is evidence to ensure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). *See Delaware v. Prouse; United States v. Martinez-Fuerte.*

### 1. Role of supervisory personnel.

We agree with the *Ingersoll* court that the decision to set up a sobriety roadblock, the selection of the site and procedures for conducting it must be made and established by supervisory law enforcement personnel rather than officers in the field. Ideally, roadblock decisions should be made by the chief of police or other high-ranking supervisory officials. *See Little v. State,* 300 Md. 485, 479 A.2d 903 (1984). This is essential to reduce the possibility of improper, unbridled discretion of the officers who meet and deal with the motoring public.

### 2. Restrictions on discretion of field officers.

For a valid roadblock, it is important that the discretion of field officers be restricted.

*Ingersoll.* Automobiles should not be stopped randomly. It would be proper to stop every automobile. Alternatively, the procedural plan may properly include a mathematical selection formula, stopping, for example, every third automobile. Unrestricted discretion in determining which vehicle to stop leads to the evil we seek to avoid. It is also wise to instruct officers orally or in writing on uniform procedures to be utilized when stopping motorists. As nearly as possible, each motorist should be dealt with in precisely the same manner.

### 3. Safety.

The safety of the motoring public and the field officer should also be given proper consideration. Here, we look to safety measures aimed at warning approaching traffic, the degree to which the roadblock causes traffic congestion and whether the roadblock is set up in such a way so as to put the motoring public and officers in unnecessary peril.

### 4. Reasonable location.

The location of the roadblock is significant in determining the degree of intrusiveness and safety of the public and police. *Ingersoll.* It will also impact on the deterrent effect of the sobriety roadblock and its detection value. Obviously, a location chosen with the actual intent of stopping and searching only a particular group of people, i.e., hispanics, blacks, etc., would not be tolerated.

### 5. Time and duration.

This factor also bears on the intrusiveness and effectiveness of the roadblock. *Ingersoll.* Reasonableness is the standard. For example, sobriety checkpoints established during the late evening hours on a weekend may be reasonable to detect drunk drivers, while continuing the roadblock through Monday morning during rush hour might not be reasonable.

### 6. Indicia of official nature of the roadblock.

The official nature of the roadblock should be immediately apparent. Officers in the field should be uniformed; police cars should be marked; and warning or stop signs, flares and pylons are advisable. The roadblock scene should strike an appropriate balance to provide for high visibility at the roadblock, yet minimize the potential fear and apprehension to the public. In addition to being important for safety reasons, these indicia will reassure motorists that the stop is duly authorized. *Ingersoll.*

### 7. Length and nature of detention.

The average length of time that a motorist is detained at the roadblock and the degree of intrusiveness should be minimized. This will avoid lengthy delays and traffic congestion. Initially, motorists should be detained only long enough to be informed of the purpose of the stop and to look into the vehicle for signs of intoxication. Where facts within the observation of the officer warrant further investigation, the suspected motorist should be asked to pull into a separate testing area so as not to unreasonably inhibit the flow of traffic.

### 8. Advance publicity.

The deterrence value of any roadblock and its reasonableness for sobriety checks will be enhanced if given widespread advance publicity. *Ingersoll; Commonwealth v. McGeoghegan*, 389 Mass. 137, 449 N.E.2d 349 (1983).

Considering and balancing the interests involved, we hold that sobriety roadblocks conducted in accordance with guidelines approximating those we have enumerated are permissible under the fourth amendment to the United States Constitution.

**ISSUE NO. 2**

■ The question now is whether the roadblock in question passes constitutional muster. Although an analysis of the constitutionality of the roadblock in this case is problematic because the city attorney was operating under the misapprehension that defendants had the burden of proving the illegality of the roadblock, a number of important facts were stipulated to at the

**660**

beginning of trial. The stipulated facts were that: 1) the roadblock was implemented by supervisory personnel of the Las Cruces Police Department; 2) there were flares in the vicinity, a stop sign was used and the area was well lighted; 3) a marked patrol car and a BATmobile were present; 4) flares and pylons were used so that cars were funneled into one lane; 5) officers wore reflective vests and carried flashlights to stop approaching motorists; 6) the roadblock was designed to make the detentions as brief as possible; 7) advance notice was given to a radio station for public release; and 8) a diagram of the location, showing the method by which the roadblock was carried out was entered into evidence. Additionally, on cross-examination, there was testimony that three officers were present at the roadblock, that a supervisor had briefed them about the operation and they were given instructions and a written outline of procedures to be followed. All westbound traffic was stopped at the scene. Thus, the roadblock substantially complied with the guidelines. The officers' discretion was curtailed; there was concern for the safety of the police and the motorists; and the location, duration and length of the individual stops was reasonable. For these reasons, defendant Baca's conviction is affirmed.

**CONCLUSION**

We hold that a roadblock set up and operated for the purpose of detecting and apprehending drunk drivers is constitutionally permissible so long as it is reasonable within the meaning of the fouth amendment as measured by its substantial compliance with the guidelines outlined previously. For the foregoing reasons, we further hold that the roadblock set up and operated by the Las Cruces police was reasonable. The trial court's denial of defendants' motions to suppress are affirmed.

IT IS SO ORDERED.

BIVINS and FRUMAN, JJ., concur.