902 P.2d 1060

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jack BATES, Defendant–Appellant.**

**No. 15519.**

Court of Appeals of New Mexico.

June 27, 1995.

Certiorari Denied Sept. 1, 1995.

458

Tom Udall, Attorney General and M. Anne Wood, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Todd Hotchkiss, Timothy M. Padilla & Associates, P.C. and John W. Higgins, Higgins, Mescall & Lee, Albuquerque, for Defendant–Appellant.

## OPINION
WECHSLER, Judge.

Defendant appeals his conviction for driving while intoxicated (DWI). He contends that the roadblock at which he was detained violated prohibitions of both the New Mexico and the United States Constitutions against unreasonable searches and seizures. We hold that the roadblock was not an unreasonable search and seizure and, therefore, affirm.

## Facts

Approximately two weeks before the Fourth of July weekend in 1993, Sergeant Karl Offner of the Albuquerque Police Department requested authorization from his superiors to set up a DWI checkpoint. Offner presented the proposal to his superiors explaining his purpose in establishing the roadblock and his reasons for choosing the proposed location. Offner noted that he had been told by the deputy police chief that a checkpoint was needed and Offner had been requested to make a proposal for one. Since the primary purpose for DWI roadblocks is to deter drunk driving, Offner based the particular location of the checkpoint on traffic studies showing a number of alcohol-related accidents in the vicinity. Offner's request was approved by his lieutenant, captain, and the deputy chief of police on June 25, 1993.

Police officers set up the roadblock at the intersection of Eubank Boulevard and Chico Street in Albuquerque to stop southbound traffic on Eubank. They planned to maintain the roadblock from 11:00 p.m. on Friday, July 2, 1993, until 3:00 a.m. on July 3, 1993. The checkpoint involved Batmobiles, a large transport van, and a series of warning signs. It also included marked Albuquerque police cars as well as signs indicating an "APD checkpoint." There was a lighted area set aside for field sobriety testing. The checkpoint was visible to oncoming traffic from four-tenths of a mile away. Those who wanted to avoid the checkpoint could go through a Burger King parking lot and exit onto Copper Avenue.

The officers at the scene wore APD uniforms, badges, and fluorescent jackets with "Police" written on them. The officers were instructed to stop every vehicle and treat each driver in the same manner, asking for the driver's license, registration, and proof of insurance. Supervisors told the officers to limit the initial contact with a driver to one minute. If, at any time, vehicles had to wait longer than four minutes, the officers were told to allow all traffic to proceed through the roadblock for five minutes or until the backup cleared. However, no backup ever occurred necessitating such a procedure.

After the checkpoint was approved, Offner sent a news release advising the media of the checkpoint. The release identified the location of the checkpoint, even though routine media practice, at APD's request, is for the media not to inform the public of the exact location of a checkpoint. Some of the media erroneously reported that the checkpoint would be located in the southeast quadrant of the city, while others simply stated that there would be stepped-up DWI checkpoints

and other efforts to deter drunk driving during the holiday weekend.

*Discussion*

## I. *DWI Roadblocks Do Not Require a Warrant*

Relying on *State v. Gutierrez,* 116 N.M. 431, 863 P.2d 1052 (1993), and *Campos v. State,* 117 N.M. 155, 870 P.2d 117 (1994), Defendant argues that the New Mexico Constitution, Article II, Section 10 (Repl.Pamp. 1992), and current case law interpreting our constitution require that a roadblock be supported by a search warrant. We do not believe that either *Gutierrez* or *Campos* requires us to change our case law regarding DWI roadblocks. That law is governed by *City of Las Cruces v. Betancourt,* 105 N.M. 655, 735 P.2d 1161 (Ct.App.), *cert. denied,* 105 N.M. 618, 735 P.2d 535 (1987). *See also State v. Goss,* 111 N.M. 530, 532, 807 P.2d 228, 230 (Ct.App.), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991). *Betancourt* held that a DWI roadblock, at which drivers are stopped without probable cause or reasonable suspicion, is not a per se violation of the Fourth Amendment to the United States Constitution; the constitutionality of the roadblock depends on whether it is reasonable. *Id.* at 657, 735 P.2d at 1163. *Betancourt* did not discuss whether a warrant is required for a roadblock.

*Gutierrez* was concerned with the execution of an invalid search warrant in a situation that required a warrant authorizing a no-knock entry into a residence. *Id.* at 432, 863 P.2d at 1053. The *Gutierrez* Court stated that "[p]robable cause serves as the *justification* for mobilizing police action. Once probable cause has been determined by a detached and neutral judicial officer, the executing officers' right to [seize and search] matures.... The constitutional requirement of reasonableness governs the *conduct* of the search[.]" *Id.* at 434–35, 863 P.2d at 1055–56. Defendant argues that the reasonableness requirement of a roadblock goes only to the *conduct* of the roadblock and that the constitutional requirement for probable cause, which is met by a search warrant, is not addressed in our roadblock cases. As we explain below, however, we believe that the reasonableness requirement of our roadblock cases serves to satisfy both the justification and conduct prongs of *Gutierrez.*

*Campos* dealt with whether probable cause alone was enough for a valid, warrantless arrest of a suspect in a moving motor vehicle. *Campos,* 117 N.M. at 156, 870 P.2d at 118. Our Supreme Court held that if probable cause is present and there are exigencies preventing the police officer from obtaining a warrant, then it would be reasonable to seize a suspect without a warrant. *Id.* at 159, 870 P.2d at 121. Without those exigencies, it is unreasonable to arrest without a warrant. *Id.* The opinion in *Campos* is based on what is reasonable, as are the opinions in other cases dealing with searches and seizures.

 Although there is no question that a roadblock is a seizure, a roadblock does not require reasonable suspicion or probable cause with respect to a particular motorist. *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990); *State v. Bolton,* 111 N.M. 28, 32, 801 P.2d 98, 102 (Ct.App.), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990). Rather, a roadblock must be reasonable. "The reasonableness of a roadblock provides a constitutionally adequate substitute for the reasonable suspicion that would otherwise be required to justify the detention of vehicles and the questioning of their occupants." *Id.*

Defendant argues that the reasonableness of the roadblock only validates the conduct of the officers at the roadblock, but does not address the need for exigent circumstances or a warrant. He argues that no exigent circumstances existed in this case and that there is no reason why a search warrant should not have been obtained in order to set up the roadblock.

 A warrant "interjects a detached and neutral decisionmaker between the police and the person to be searched." *Gutierrez,* 116 N.M. at 434, 863 P.2d at 1055. It requires the probable cause determination to be made by a disinterested magistrate rather than the police officer. *State v. Cordova,* 109 N.M. 211, 213, 784 P.2d 30, 32 (1989). The purpose of a warrant is to safeguard individuals against arbitrary intrusion by police offi-

cers in the pursuit of suspected criminals. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 621–22, 109 S.Ct. 1402, 1415–16, 103 L.Ed.2d 639 (1989). A warrant "prevent[s] hindsight from coloring the evaluation of the reasonableness of [the] seizure." *United States v. Martinez–Fuerte,* 428 U.S. 543, 565, 96 S.Ct. 3074, 3086, 49 L.Ed.2d 1116 (1976) (permanent border checkpoint case).

■ We do not believe that the decision to set up a DWI checkpoint should require a warrant. The evils that a warrant is designed to prevent are addressed by the restrictions on the field officer's discretion in setting up and conducting a roadblock. *See Betancourt,* 105 N.M. at 658, 735 P.2d at 1164.

■ In a case involving a permanent border checkpoint, we held that a brief stop for routine questioning for the purpose of detecting illegal immigrants need not be authorized by a search warrant. *State v. Affsprung,* 115 N.M. 546, 548–49, 854 P.2d 873, 875–76 (Ct. App.), *cert. denied,* 115 N.M. 545, 854 P.2d 872 (1993). Further, "[t]he reasonableness of checkpoint stops ... turns on factors such as the location and method of operation of the checkpoint, factors that are not susceptible to the distortion of hindsight[.]" *Martinez–Fuerte,* 428 U.S. at 565, 96 S.Ct. at 3086. Defendant suggests that the principles outlined in the cases involving border checkpoints do not apply to DWI roadblocks. We agree that the validity of temporary DWI checkpoints does not necessarily flow from the validity of permanent border checkpoints and, hence, requires a separate analysis.

*State v. Olgaard,* 248 N.W.2d 392, 395 (S.D.1976), a case cited by Defendant, held that a warrant is required to investigate motorists for possible liquor law violations. *Olgaard* distinguished DWI roadblocks from permanent border checkpoints and observed that *Martinez–Fuerte* hinged on the permanency of the checkpoint location. *Olgaard,* 248 N.W.2d at 394. However, one feature of the checkpoint in *Olgaard* was that the defendants had no warning that they were about to enter the roadblock. *Id.* In the present case, there was such warning, and, in fact, warning is one of the factors in determining the reasonableness of the roadblock.

*Betancourt,* 105 N.M. at 659, 735 P.2d at 1165. More importantly, there was no record in *Olgaard* of "whether the location of the roadblock was chosen by officers in the field or by administrative officials responsible for deciding how to deploy their enforcement resources." *Olgaard,* 248 N.W.2d at 394. As a result, the *Olgaard* Court considered the roadblock to have characteristics of a roving patrol, a type of intrusion held unconstitutional by the United States Supreme Court. *Id.* at 395 (citing *Almeida–Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), and *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)).

■ In New Mexico, pursuant to *Betancourt,* 105 N.M. at 658, 735 P.2d at 1164, the decision to set up a DWI roadblock must be made by supervisory personnel rather than officers in the field. The discretion of the field officers also must be limited regarding the manner in which the vehicles are stopped, so that each is treated as uniformly as possible. *Id.* at 658–59, 735 P.2d at 1164–65. Under these circumstances, there is no need to substitute the judgment of a magistrate for that of the seizing officer or that of the supervisor who made the decision to set up the roadblock.

■ Furthermore, routine stops at DWI roadblocks are far less intrusive and threatening than the search of a residence or an arrest. Therefore, what is reasonable in the case of a DWI roadblock is different from what is reasonable in the search of one's home. *See State v. Jones,* 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App.) ("Whether or not a search and seizure ... violates the Fourth Amendment is judged under the facts of each case by balancing the degree of intrusion into an individual's privacy against the interest of the government in promoting crime prevention and detection."), *cert. denied,* 114 N.M. 62, 834 P.2d 939 (1992). Because the purpose of DWI checkpoints directly addresses highway safety by detecting and deterring drunk drivers, we find a state interest in conducting the checkpoints that outweighs any inconvenience to innocent drivers when the *Betancourt* guidelines are followed.

We recognize that a warrant would minimize the chance of an after-the-fact challenge to the decision of where and when to set up the checkpoint. It would also minimize the chance of abuse by the police department in choosing a time and location of the roadblock for purposes unrelated to the apprehension of drunk drivers. In addition, because roadblocks are often planned well in advance, there is no reason why approval of a magistrate could not easily be obtained. However, we do not believe that such approval is required under either the New Mexico Constitution or the United States Constitution. Moreover, if it can be shown that abuse by the police department has occurred in setting up the roadblock, that abuse can be addressed by the trial court and reviewed by this Court.

## II. *The Roadblock Was Conducted Reasonably*

■ Defendant argues that Offner failed to articulate specific facts that would support the reasonableness of the roadblock. He cites out-of-state authority in support of his contention that specific empirical data showing, for instance, the number of DWI-related traffic accidents in a particular location over a certain period of time, must be presented to support the reason for the roadblock and the decision as to when and where it would be located. He argues that, without such facts, the reasonableness of the roadblock could not properly be assessed.

We do not agree that specific empirical data are required to support the reasonableness of the roadblock. Offner testified that the choice of location for the roadblock "was based on traffic analysis indicating a number of alcohol related accidents in this general vicinity from Lomas and Eubank south to Central. And on Central it's a frequently traveled thoroughfare that's had alcohol related accident problems." We believe that the facts presented by Offner, albeit not specific in terms of quantity and time, provide a sufficient basis for the decision to set up the roadblock.

The out-of-state cases cited by Defendant do not persuade us. In two of the cases, empirical data were present in the record;

however, there is nothing in the holdings of those cases requiring such specific data to uphold a roadblock. *Little v. State,* 300 Md. 485, 479 A.2d 903 (1984); *State v. Coccomo,* 177 N.J.Super. 575, 427 A.2d 131 (Ct.Law Div.1980). In three other cases, the roadblocks were found to be unconstitutional seizures mainly because the prosecution failed to show that specific, formal, neutral guidelines had been established by supervisory personnel to guarantee minimal intrusion on innocent drivers and minimal discretion allowed officers in the field. *State ex rel. Ekstrom v. Justice Court,* 136 Ariz. 1, 4–5, 663 P.2d 992, 995–96 (1983) (en banc); *Commonwealth v. Amaral,* 398 Mass. 98, 495 N.E.2d 276, 278–79 (1986); *Webb v. State,* 739 S.W.2d 802, 810 (Tex.Crim.App.1987) (en banc). In *Ekstrom,* in addition to the lack of specific guidelines, there was no warning to drivers, and the court found that the considerable discretion afforded to officers in the field presented a "grave danger" of police abuse. *Ekstrom,* 663 P.2d at 996. The *Amaral* Court found that existing judicial guidelines for DWI roadblocks established in *Commonwealth v. McGeoghegan,* 389 Mass. 137, 449 N.E.2d 349, 353 (1983), which guidelines include some of the *Betancourt* factors, were not followed by law enforcement officials. *Amaral,* 495 N.E.2d at 278. The *Webb* Court also cited *McGeoghegan* and found that the police had failed to follow the *McGeoghegan* guidelines. *Webb,* 739 S.W.2d at 810.

■ The ultimate question for this Court is whether the facts and inferences before the trial court support its conclusion that the roadblock was reasonable. *See State v. Attaway,* 117 N.M. 141, 149, 870 P.2d 103, 111 (1994). We must review the evidence presented, giving deference to the facts found by the trial court, and then determine whether those facts are legally sufficient to make the roadblock reasonable. *See Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984). The facts in this case were sufficient for the trial court to determine that the roadblock was reasonable.

■ Although Defendant focuses on the lack of basis for the location of the roadblock and the allegedly deficient advance

publicity, those are only two of eight factors to be taken into consideration in determining whether a roadblock is reasonable. *Betancourt,* 105 N.M. at 658–59, 735 P.2d at 1164–65. In determining the reasonableness of a roadblock, all the factors must be considered, and none is dispositive but the role of supervisory personnel and the restrictions on discretion of field officers. *See id.* at 658, 735 P.2d at 1164. The question is whether, on balance, the roadblock has been set up so as "to ensure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Id.*

The roadblock in this case was approved by three supervisory personnel. It was to occur on a Friday night of a holiday weekend. We do not believe that Offner needed to present his superiors with specific studies showing that more people drink and drive on a Friday night, in particular, a Friday night that begins a long weekend. *See Betancourt,* 105 N.M. at 659, 735 P.2d at 1165. The roadblock was set up to begin at 11:00 p.m. and end at 3:00 a.m., an hour after bars close. This is a reasonable time to check for drunk drivers and is not likely to create undue traffic congestion.

Offner chose the location of the roadblock based on a traffic analysis that showed a number of alcohol-related accidents in that vicinity. There was no indication of an intent to stop and search a particular group of people.

Supervisors ordered the officers operating the checkpoint to stop every vehicle and ask each driver the same questions. The officers were to limit their initial contact with a given driver to one minute. If traffic became congested, the officers were to allow all traffic to flow for up to five minutes to relieve the congestion. The officers set up the roadblock with indicia of its official nature. They appropriately placed warning signs ahead of the roadblock, and the roadblock was visible from four-tenths of a mile away. There was a separate, lighted area for secondary investigation.

Finally, there was advance publicity. Defendant argues that the publicity either did not give any location of the roadblock or it gave an incorrect location. Offner testified that when he obtained approval for the roadblock, he gave notice to the public information officer. That notice stated the exact location of the roadblock along with its location in the southeast quadrant of the police command. The public apparently received information that the roadblock would be in the southeast quadrant of the city or that there would simply be stepped-up enforcement of DWI laws. Whether or not there is advance publicity is not dispositive of the reasonableness of a DWI roadblock. *Betancourt,* 105 N.M. at 658, 735 P.2d at 1164.

*Conclusion*

The facts presented in this case were legally sufficient to show the reasonableness of the roadblock under both the New Mexico and United States Constitutions. Therefore, we affirm the trial court's determination that the roadblock was reasonable, and we affirm Defendant's conviction.

**IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.