908 P.2d 756

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Aurelia MADALENA, Defendant–
Appellant.**

**No. 16008.**

Court of Appeals of New Mexico.

Sept. 19, 1995.

Certiorari Denied Nov. 21, 1995.

Tom Udall, Attorney General, Bill Primm, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender, Rita LaLumia, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

### OPINION

FLORES, Judge.

1. Defendant was convicted of driving while intoxicated (DWI) after being stopped at a sobriety checkpoint, also known as a DWI roadblock, conducted by the Albuquerque Police Department (APD). Defendant appeals on the basis that the roadblock was an unconstitutional search and seizure under Article II, Sections 4 and 10 of the New Mexico Constitution, which Defendant contends provide greater protection than the Fourth Amendment to the United States Constitution. We hold that the roadblock was a reasonable search and seizure under the New Mexico Constitution and affirm Defendant's conviction.

### BACKGROUND

2. On January 21, 1994, the APD set up a sobriety checkpoint on Central Avenue, SE, which was conducted between the hours of 12:00 a.m. and 3:00 a.m. on January 22, 1994. The location of the roadblock was chosen by reference statistics concerning alcohol-related accidents and fatalities in the area. The purpose of the roadblock was to enforce the DWI laws and deter persons from driving while intoxicated.

3. Sergeant Anne Avend-t, Tactical Supervisor for the DWI Unit of the APD, requested and received authority from superior officers, including the lieutenant, the captain, and the deputy chief of police to conduct the roadblock. Prior to commencing the roadblock, officers attended a briefing session from 11:00 p.m. to 12:00 a.m. Officers were instructed to stop each motorist traveling westbound on Central Avenue who approached the stop sign. Officers were further instructed to say the same thing to each driver, including: "Good evening, I'm Officer _____. This is an Albuquerque Police Department sobriety checkpoint. How are you?" The officer would then hand the driver a piece of literature on the law. If the officer smelled alcohol on the driver's breath, noticed bloodshot, watery eyes, slurred speech, or the presence of an open container of alcohol, then the driver would be instructed to proceed to the inspection area.

4. Safety features were employed at the checkpoint site including a safe-stopping distance before entering the checkpoint area, a safety zone where drivers could go for further investigation, two separate field sobriety test areas, and an area for the Batmobile (APD's mobile breath-alcohol testing unit). There were six police cars with their lights flashing parked at the checkpoint site. Orange pylons separated the police cars from the area where motorists came to a stop at the special stop signs. The police officers working the roadblock wore APD uniforms, badges and reflectorized traffic vests. Addi-

tional portable lighting was provided for the test areas.

5. To minimize the intrusion on motorists, Sergeant Avend-t instructed the contact officers that no driver should wait in line for more than four minutes and that no driver should be delayed at the stop sign for more than one minute. If these limits were exceeded, Sergeant Avend-t ordered that the stop signs be reversed and that traffic be allowed to proceed uninhibited. Nevertheless, it did not become necessary to utilize this procedure during the roadblock in question. If directed to complete field sobriety testing, motorists could be detained for up to five minutes.

6. Prior to the roadblock, Sergeant Avend-t arranged for publicity by contacting the *Albuquerque Journal, Albuquerque Tribune*, and Associated Press news desks and providing them with a press release. Sergeant Avend-t also provided the APD's public information officer with a press release. Further, two local television stations videotaped the roadblock.

7. Defendant approached the roadblock in the early morning hours of January 22, 1994. Officer Hernandez detected a strong odor of alcohol on Defendant's breath, bloodshot, watery eyes, and slurred speech. Defendant was instructed to proceed to the inspection area for further testing. Officer Hernandez directed Defendant to perform field sobriety tests, which Defendant failed. Defendant was given a breath test and was found to have a blood alcohol content of 0.21%. The breath test card was admitted at trial by stipulation.

8. Defendant was charged with DWI and with driving without a license. At the close of the evidence in metropolitan court, Defendant moved to suppress evidence obtained as a result of the stop on the grounds that the DWI roadblock was an unconstitutional search and seizure under the Fourth Amendment to the United States Constitution, and under Article II, Sections 4 and 10 of the New Mexico Constitution. After hearing the testimony, the court found Defendant guilty of DWI. No evidence was presented on the charge for driving without a license, which was dismissed.

9. Defendant appealed to the district court, arguing that the roadblock was unconstitutional because the New Mexico Constitution affords greater protection than the United States Constitution. Relying on *City of Las Cruces v. Betancourt*, 105 N.M. 655, 735 P.2d 1161 (Ct.App.), *cert. denied*, 105 N.M. 618, 735 P.2d 535 (1987), the district court affirmed the judgment of the metropolitan court. Defendant appeals.

### DISCUSSION

10. Defendant argues that Article II, Sections 4 and 10 of the New Mexico Constitution afford greater protection than the United States Constitution when DWI roadblocks are used to stop motorists with no reasonable suspicion that a crime has been committed. In light of *Betancourt* and *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), Defendant admits that any constitutional challenge to the roadblock made under the Fourth Amendment to the United States Constitution would be precluded. Thus, Defendant's claims are made under the New Mexico Constitution.

### I. *Constitutionality of Roadblock*

11. It is well settled that detaining motorists at a sobriety checkpoint "for the purpose of detecting and apprehending drunk drivers constitutes a 'seizure.'" *Betancourt*, 105 N.M. at 657, 735 P.2d at 1163. Therefore, the dispositive question here is whether, under the particular facts and circumstances of this case, the roadblock was conducted in a manner consistent with state constitutional requirements.

12. Caselaw in New Mexico regarding DWI roadblocks is governed by *Betancourt*. In *Betancourt*, we stated that stopping motorists at a roadblock without probable cause or reasonable suspicion is not a per se violation of the Fourth Amendment to the United States Constitution. *Id.* Instead, the question is one of reasonableness. *Id.* To determine the reasonableness of a roadblock, we followed other jurisdictions in adopting a balancing test whereby we "balance the gravity of the governmental interest or public concern served by the roadblock,

the degree to which it advances these concerns and the severity of the interference with individual liberty, security, and privacy resulting from the roadblock." *Id.*, at 658, 735 P.2d at 1164. We further presented eight guidelines to consider and held that roadblocks conducted in accordance with these guidelines are valid under the Fourth Amendment to the United States Constitution. *Id.* at 658–59, 735 P.2d at 1164–65.

13. Recently, in *State v. Bates,* 120 N.M. 457, 902 P.2d 1060 (Ct.App.), *cert. denied,* 120 N.M. 213, 900 P.2d 962 (1995), this Court applied the *Betancourt* factors to the facts of the case and determined that the roadblock was reasonable under both the New Mexico Constitution and the United States Constitution. *Id.* at 461, 902 P.2d at 1064. The distinguishing factor is that in *Bates* there was no argument, as there is here, that the New Mexico Constitution affords more protection than the United States Constitution.

14. In this case, Defendant argues that, since *Betancourt* was decided, our Supreme Court has considerably expanded state constitutional law concerning the reasonableness of searches and seizures. *See State v. Attaway,* 117 N.M. 141, 149–51, 870 P.2d 103, 111–13 (1994) (holding that knock and announce rule in serving search warrants is incorporated in protection offered by New Mexico Constitution, Article II, Section 10); *State v. Gutierrez,* 116 N.M. 431, 435–47, 863 P.2d 1052, 1056–68 (1993) (rejecting "good faith" exception to exclusionary rule); *State v. Cordova,* 109 N.M. 211, 212–17, 784 P.2d 30, 31–36 (1989) (rejecting federal "totality of the circumstances" test in favor of two-prong common-law test for search warrants). Defendant contends that, given our Supreme Court's inclination to interpret the New Mexico Constitution as providing greater protection, this Court should find that sobriety checkpoints are unreasonable under the protections afforded by the New Mexico Constitution.

15. Defendant relies on two sections of Article II for his argument that the New Mexico Constitution affords more protection than the Fourth Amendment to the United States Constitution. Article II, Section 4 of the New Mexico Constitution provides:

All persons are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness.

16. Article II, Section 10 provides:

The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

17. In comparison, the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be ·searched, and the persons or things to be seized.

U.S. Const. amend. IV.

18. Other than a general contention, Defendant makes no specific argument for the proposition that Article II, Section 4 affords greater protection than the Fourth Amendment in the search and seizure area. In this regard, we also fail to see how the language of Article II, Section 4 affords more protection against unreasonable searches and seizures than does Article II, Section 10 of the Fourth Amendment.

19. Regarding Article II, Section 10, the language therein is substantially similar to the Fourth Amendment. We recognize, however, that Article II, Section 10 of the New Mexico Constitution, in some circumstances, affords greater protection than the Fourth Amendment against searches and seizures. *See Attaway,* 117 N.M. at 149–51, 870 P.2d at 111–13; *Gutierrez,* 116 N.M. at 435–47, 863 P.2d at 1056–68; *Cordova,* 109 N.M. at 212–17, 784 P.2d at 31–36. As illustrated

by these cases, our Supreme Court "has demonstrated a willingness to undertake independent analysis of our state constitutional guarantees when federal law begins to encroach on the sanctity of those guarantees." *Gutierrez*, 116 N.M. at 440, 863 P.2d at 1061.

20. In undertaking an independent analysis of Article II, Section 10, our Supreme Court has taken notice of decisions from other jurisdictions, as well as the United States Supreme Court, in an effort to meet "the responsibility of state courts to preserve national uniformity in development and application of fundamental rights guaranteed by our state and federal constitutions." *Id.* at 436, 863 P.2d at 1057. In reviewing precedent from other jurisdictions, we note that approximately the same number of states have held roadblocks to be constitutional [1] under state constitutional law as have held roadblocks to be unconstitutional.[2]

21. The United States Supreme Court in *Sitz* held that a sobriety checkpoint does not violate the Fourth Amendment. *Sitz*, 496 U.S. at 455, 110 S.Ct. at 2487. The Court applied a balancing test enunciated in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), which balances the State's interest in preventing accidents caused by drunk drivers, the extent to which a sobriety checkpoint advances that interest, and the degree of intrusion on motorists who are briefly detained. *Sitz*, 496 U.S. at 448–50, 110 S.Ct. at 2484–85. The Court determined that the measure of intrusion on individual motorists, briefly detained at sobriety checkpoints is minimal in comparison with the magnitude of the drunk-driving problem and the State's obvious interest in eradicating it. *Id.* at 451, 110 S.Ct. at 2486. The Court determined that a 1.6% detection rate was sufficient to sustain the constitutionality of a sobriety checkpoint, thus satisfying the public interest part of the balancing test. *Id.* at 455, 110 S.Ct. at 2487.

22. Our Supreme Court has departed from the United States Supreme Court when the latter has abandoned or redefined established constitutional interpretation. For example, *Cordova* marked the first departure of our Supreme Court from federal law in the search and seizure area. In *Cordova*, the Court affirmed the application of the two-prong test first enunciated, but later abandoned, by the United States Supreme Court for determining the validity of a search warrant based upon an informant's affidavit. *Cordova*, 109 N.M. at 217, 784 P.2d at 36. Our Supreme Court rejected the United States Supreme Court's subsequent abandonment of the two-prong test and adoption of a determination based on the " 'totality of the circumstances' test." *Id.* In doing so, the Court primarily relied upon the codification

1. Jurisdictions holding sobriety checkpoints constitutional under state constitutional law are: *Hagood v. Town of Town Creek*, 628 So.2d 1057, 1062 (Ala.Crim.App.1993); *State v. Tykwinski*, 170 Ariz. 365, 824 P.2d 761, 765–67 (Ct.App. 1991), *review denied* (Mar. 3, 1992); *Ingersoll v. Palmer*, 43 Cal.3d 1321, 241 Cal.Rptr. 42, 49–51, 743 P.2d 1299, 1306–08 (1987); *People v. Rister*, 803 P.2d 483, 486–89 (Colo.1990) (en banc); *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174, 1185 (1983); *State v. Patterson*, 582 A.2d 1204, 1205–06 (Me.1990), *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); *Commonwealth v. Trumble*, 396 Mass. 81, 483 N.E.2d 1102, 1105–07 (1985); *State v. Welch*, 755 S.W.2d 624, 632–33 (Mo.Ct.App.1988); *State v. Mazurek*, 237 N.J.Super. 231, 567 A.2d 277, 279–81 (Ct.App.Div.1989), *cert. denied*, 121 N.J. 623, 583 A.2d 320 (1990); *City of Bismarck v. Uhden*, 513 N.W.2d 373, 379 (N.D.1994); *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177, 1180 (1992); *Lowe v. Commonwealth*, 230 Va. 346, 337 S.E.2d 273, 277 (1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986).

2. Jurisdictions holding sobriety checkpoints unconstitutional pursuant to state constitutional law are: *State v. Henderson*, 114 Idaho 293, 756 P.2d 1057, 1057 (1988); *State v. Church*, 538 So.2d 993, 996 (La.1989); *Sitz v. Department of State Police*, 193 Mich.App. 690, 485 N.W.2d 135, 139 (1992), *aff'd*, 443 Mich. 744, 506 N.W.2d 209 (1993); *Ascher v. Commissioner of Pub. Safety*, 519 N.W.2d 183, 187 (Minn.1994); *State v. Koppel*, 127 N.H. 286, 499 A.2d 977, 982 (1985); *State v. Blackburn*, 63 Ohio Misc.2d 211, 620 N.E.2d 319, 324 (Mun.Ct.1993); *Pimental v. Department of Transp.*, 561 A.2d 1348, 1352 (R.I. 1989); *State v. Olgaard*, 248 N.W.2d 392, 394 (S.D.1976); *City of Seattle v. Mesiani*, 110 Wash.2d 454, 755 P.2d 775, 776 (1988) (en banc); *see also* Cynthia R. Bartell, Comments, *Giving Sobriety Checkpoints the Cold Shoulder: A Proposed Balancing Test for Suspicionless Seizures Under the Minnesota Constitution*, 20 Wm. Mitchell L.Rev. 515, 539–57 (1994) (arguing in favor of invalidating roadblocks under language of Minnesota Constitution).

of the two-prong test in SCRA 1986, 5–211(E) (Repl.1992) and its flexible application. *Id.* at 214, 784 P.2d at 33. The Court concluded that "our present court rules better effectuate the principles behind Article II, Section 10 of our Constitution than does the 'totality of the circumstances' test." *Id.* at 217, 784 P.2d at 36.

23. Similarly, in *Gutierrez,* our Supreme Court held that the "good-faith" exception to the federal exclusionary rule, first recognized by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984), is incompatible with Article II, Section 10 of the New Mexico Constitution. *Gutierrez,* 116 N.M. at 447, 863 P.2d at 1068. The Court concluded that interpretation of Article II, Section 10 was a judicial task conferred by the people of New Mexico when framing our Constitution. *Id.* at 444, 863 P.2d at 1065. Because Article II, Section 10 does not, by its express language, provide guidance on remedies for violation of the right against unreasonable searches and seizures, the Court determined that to effectuate the constitutional right to be free from an unreasonable search and seizure, it must deny the State the use of evidence obtained as a result of an unlawful search. *Id.*

24. In *Attaway,* our Supreme Court considered the applicability of Article II, Section 10 to the "knock-and-announce" rule, on which federal precedent was divided. *Attaway,* 117 N.M. at 149–51, 870 P.2d at 111–13. In that case, our Supreme Court relied upon the common law in determining what was required of police officers under Article II, Section 10 of the New Mexico Constitution, regarding "announcement" when entering a premises and executing a search warrant. *Id.* Relying on decisions from federal and other state court jurisdictions, the Court determined that the common-law "knock and announce" rule is constitutionally based in New Mexico. *Id.* at 150–51, 870 P.2d at 112–

13. The Court held that "[t]he requirement that officers executing a search warrant announce their identity and purpose and be denied admission is a critical component of a reasonable search under Article II, Section 10." *Id.* at 150, 870 P.2d at 112.

25. The common thread in these decisions is that our Supreme Court has repeatedly stated that the essence of Article II, Section 10 of the New Mexico Constitution is whether the search and seizure was reasonable. *Id.* at 149, 870 P.2d at 111; *Gutierrez,* 116 N.M. at 446, 863 P.2d at 1067; *see also Campos v. State,* 117 N.M. 155, 157, 870 P.2d 117, 119 (1994). "This rule of law is best served by the application of certain objective criteria in deciding the reasonableness of any search and seizure." *Id.* at 149, 870 P.2d at 111. In this regard, we believe that the *Betancourt* guidelines constitute sufficient objective criteria by which to measure the reasonableness of roadblocks under the New Mexico Constitution.[3]

26. In *Betancourt,* we not only applied a balancing test identical to that adopted in *Sitz,* but, in addition, adopted eight guidelines to consider in determining the reasonableness of a roadblock. *Betancourt,* 105 N.M. at 658–59, 735 P.2d at 1164–65. The eight factors impose additional and stricter guidelines than the balancing test used by the United States Supreme Court in *Sitz.* For this reason, although Article II, Section 10 of the New Mexico Constitution may afford greater protection than the Fourth Amendment against unreasonable searches and seizures, we hold that a sobriety checkpoint conducted in substantial compliance with the eight *Betancourt* factors is constitutional under the New Mexico Constitution.

27. Defendant further argues that the detention at the roadblock specifically organized for the enforcement of the criminal laws was an unlawful exercise of police power

---

3. We recognize that *Betancourt* was decided solely on the basis of the Fourth Amendment. It was not until after *Betancourt* that the United States Supreme Court decided *Sitz,* wherein the Court adopted the three-tier balancing test to determine the constitutionality of roadblocks under the Fourth Amendment. "[T]he United States

Supreme Court is the final arbiter as to application of a question involving the federal constitution." *Chapman v. John St. John Drilling Co.,* 73 N.M. 261, 265–66, 387 P.2d 462, 465 (1963). Thus, roadblocks that meet the balancing test adopted in *Sitz* are constitutional under the Fourth Amendment.

and an unreasonable detention because it was not based on any articulated suspicion that Defendant committed any offense. In support of her argument, Defendant cites *Campos* where our Supreme Court interpreted Article II, Section 10 as requiring that for a warrantless arrest to be reasonable, the arresting officer must show that there was "probable cause to believe that the person arrested had committed or was about to commit a felony and some exigency existed that precluded the officer from securing a warrant." *Campos*, 117 N.M. at 159, 870 P.2d at 121. However, we have recently stated that " '[t]he reasonableness of a roadblock provides a constitutionally adequate substitute for the reasonable suspicion that would otherwise be required to justify the detention of vehicles and the questioning of their occupants.' " *Bates*, 120 N.M. at 460, 902 P.2d at 1063 (quoting *State v. Bolton*, 111 N.M. 28, 32, 801 P.2d 98, 102 (Ct.App.), *cert. denied*, 111 N.M. 16, 801 P.2d 86 (1990)).

■ 28. Moreover, this Court determined in *Bates* that the decision to set up a DWI roadblock does not require a warrant because the purpose of requiring a warrant is alleviated by the *Betancourt* restrictions. *Id.* We further held that, although approval by a magistrate could be easily obtained, neither the New Mexico Constitution nor the United States Constitution required such approval. *Id.* at 462, 902 P.2d at 1065. We see no reason to depart from *Bates* in this case.

■ 29. Furthermore, we see no basis for holding that roadblocks are unconstitutional merely because only a small number of intoxicated drivers were apprehended as a result of the roadblock. Defendant argues that the State failed to meet its burden of showing that roadblocks conducted without any factual determination that an offense has been committed are necessary to detect drivers under the influence of alcohol or that roving patrols are not in fact more effective. Whatever the factual predicate for this argument, we hold that neither the Fourth Amendment to the United States Constitution nor the New Mexico Constitution requires the State to prove that there are no equally effective yet less intrusive alterna-

tives for enforcing the DWI laws than roadblocks. *See Commonwealth v. Shields*, 402 Mass. 162, 521 N.E.2d 987, 989 (1988) (holding that state need not prove that no less intrusive alternative exists prior to implementing roadblock).

## II. *Reasonableness of the Roadblock*

■ 30. Next, we decide whether the facts of this case support the district court's determination that the roadblock was reasonable. In doing so, "[w]e must review the evidence presented, giving deference to the facts found by the trial court, and then determine whether those facts are legally sufficient to make the roadblock reasonable." *Bates*, 120 N.M. at 462, 902 P.2d at 1065. We hold that the roadblock in this case was conducted in a reasonable manner.

■ 31. The eight *Betancourt* factors for determining the reasonableness of a roadblock are: (1) the role of supervisory personnel; (2) restrictions on the discretion of field officers; (3) safety of motorists and field officers; (4) reasonable location of roadblock; (5) time and duration of roadblock; (6) indicia of official nature of roadblock; (7) length and nature of detention; and (8) advance publicity. *Betancourt*, 105 N.M. at 658–59, 735 P.2d at 1164–65. The facts of this case indicate that those eight factors were met: (1) the selection of the roadblock and the procedures for conducting it were approved by supervisory personnel of the APD; (2) the officers had no discretion as to which vehicles were stopped because they were instructed to stop every vehicle; (3) there were orange pylons, special stop signs and room for a safe-stopping distance before entering the checkpoint area, as well as six police cars with their lights flashing and a Batmobile to make the roadblock visible; (4) the location was chosen because of the number of DWI-related accidents and fatalities in the area; (5) the roadblock was conducted between the hours of 12:00 a.m. and 3:00 a.m. on a Saturday morning; (6) the officers wore APD uniforms and orange reflective vests, and six police cars were parked at the roadblock with their lights flashing; (7) the total detention was no more than five minutes per vehicle; and (8) the *Albuquerque Journal*,

*Albuquerque Tribune,* and Associated Press were all contacted and given a press release.

32. The facts in this case present a stronger case for affirmance than in *Bates.* In *Bates,* the facts regarding the process followed by the APD in both setting up and conducting the roadblock are substantially similar to those alleged here. Factually, there are only two basic differences. First, in *Bates,* although there was advance publicity, the defendant argued that such publicity either did not give any location for the roadblock or gave an incorrect location. *Bates,* 120 N.M. at 463, 902 P.2d at 1066. It appears that the public received information that the roadblock would be in a certain location of the city or that there would simply be heightened enforcement of the DWI laws. *Id.* Here, there was testimony that the roadblock was well publicized and neither party contests the lack of publicity. Second, in *Bates,* the defendant argued that there was no basis for the location of the roadblock. *Id.* at 462, 902 P.2d at 1065. In this case, there is testimony that one of the reasons for choosing the location of the roadblock was the high number of DWI incidents in that area. In *Bates,* this Court upheld the defendant's conviction on the grounds that all the *Betancourt* factors must be considered and "none is dispositive but the role of supervisory personnel and the restrictions on discretion of field officers." *Id.* at 463, 902 P.2d at 1066. Here, where we determine that all the *Betancourt* factors have been met, we likewise affirm Defendant's conviction.

### CONCLUSION

33. We hold that the *Betancourt* guidelines comport with the protections afforded by Article II, Section 10 of the New Mexico Constitution. Because we conclude that all of the *Betancourt* factors were met, we hold that the sobriety checkpoint in this case was constitutional under the New Mexico Constitution. We do not hold that all sobriety checkpoints are per se constitutional under Article II, Section 10 of the New Mexico Constitution. Rather, the facts and circumstances of each roadblock must be examined in light of the guidelines articulated in *Betancourt.*

34. We affirm Defendant's conviction.

35. **IT IS SO ORDERED.**

DONNELLY and BLACK, JJ., concur.