# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **OCTOBER 28, 2015**

**NO. 34,047**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**LAMONT SWAIN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DE BACA COUNTY**
**Matthew J. Sandoval, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Garrett Law Firm, P.A.
Michael T. Garrett
Clovis, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

{1} The State of New Mexico appeals from an order granting a motion to suppress evidence based on an unconstitutional sobriety checkpoint. The State raises a single issue on appeal: whether the lack of advance publicity makes a sobriety checkpoint unconstitutional, where the remainder of the factors in *City of Las Cruces v. Betancourt*, 1987-NMCA-039, ¶ 13, 105 N.M. 655, 735 P.2d 1161, are met. We hold that it does not and, therefore, reverse.

**I.     BACKGROUND**

{2} The facts are largely undisputed. Defendant Lamont Swain was charged with concealing identity, driving while under the influence of intoxicating liquor or drugs (DWI), and four counts of possession of a controlled substance following his arrest for refusing to show his driver's license at a sobriety checkpoint. Defendant filed a motion to suppress evidence on the grounds the sobriety checkpoint was unconstitutional because the State failed to comply with the final *Betancourt* factor relating to advance publicity. *Id.*

{3} Sergeant Herbert Hinders of the New Mexico State Police prepared the plan and supervised the checkpoint in De Baca County, between Santa Rosa and Fort Sumner. Sergeant Hinders sent an e-mail to a radio station a month before the scheduled checkpoint with a request to publicize the roadblock. He did not request

confirmation of the radio station's receipt of his e-mail and did not know whether the station received his e-mail. Sergeant Hinders also did not listen to the radio station to confirm the checkpoint was publicized and did not seek publication in the county newspaper.

## II.   DISCUSSION

{4}    A sobriety checkpoint is a seizure. *State v. Bates*, 1995-NMCA-080, ¶ 9, 120 N.M. 457, 902 P.2d 1060 (stating "there is no question that a roadblock is a seizure"). "Whether a search and seizure was constitutional is a mixed question of law and fact." *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by State v. Leyva*, 2011-NMSC-009, 149 N.M. 435, 250 P.3d 861. "We review factual  determinations by the trial court under a substantial evidence standard." *Duran*, 2005-NMSC-034, ¶ 19. "We review the lower court's determination of legal questions de novo." *Id.*

{5}    A sobriety checkpoint "is constitutionally permissible so long as it is reasonable within the meaning of the fourth amendment as measured by its substantial compliance with [eight guidelines]." *Betancourt*, 1987-NMCA-039, ¶ 16. The eight factors include: "[(1) the r]ole of supervisory personnel[, (2) r]estrictions [on] discretion of field officers[, (3) s]afety[, (4) r]easonable location[, (5) t]ime and

2

duration[, (6) i]ndicia of official nature of the roadblock[, (7) l]ength and nature of detention[, and (8) a]dvance publicity." *Id.* ¶ 13.

{6}     The district court found that the checkpoint plan was compliant with all but the advance publicity factor. The district court based its finding on the following facts: (1) the radio station never received an e-mail from Sergeant Hinders, (2) Sergeant Hinders did not verify that the e-mail had been opened or received, (3) Sergeant Hinders did not have any personal knowledge of whether the checkpoint had been publicized, (4) Sergeant Hinders did not seek to have the checkpoint publicized in the county newspaper, and (5) the radio station from which Sergeant Hinders sought the advance publicity did not reach the county in which the checkpoint was located. The district court found that, while the State attempted to publicize the checkpoint in advance, it did not act reasonably to provide advance publicity and, therefore, it did not substantially comply with the *Betancourt* factors.

{7}     For the purpose of discussion, we note that no evidence was presented regarding the radio station's broadcast range at trial. We also note that the only mention of the advance publicity issue came in Defendant's closing argument. We therefore decline to accept the district court's finding that "[a]t this point it's uncontroverted that the radio station that Sergeant Hinders attempted to publicize on does not reach De Baca County." Other than this exception, the district court's factual

3

findings are supported by substantial evidence. However, Sergeant Hinders' deficient attempts to publicize are not the central issue to this appeal. The question before us is whether a lack of advance publicity related to an otherwise *Betancourt*-compliant roadblock renders the roadblock constitutionally invalid. We hold that it does not.

{8}     In *Betancourt*, this Court analyzed a sobriety roadblock within the context of the Fourth Amendment to the United States Constitution. *Betancourt*, 1987-NMCA-039, ¶¶ 9, 14. We noted that because of the Fourth Amendment's protections against unreasonable searches and seizures, "the reasonableness of any roadblock will be very closely scrutinized." *Id.* ¶ 10. We presented eight guidelines to be considered in determining the reasonableness of a roadblock and emphasized that "we do not foreclose consideration of other relevant factors where appropriate and we hold that no one guideline is necessarily dispositive of the issue[.]" *Id.* ¶ 13. Post-*Betancourt*, two subsequent appellate decisions of this Court, discussed below, relate directly to the advance publicity guideline. Guiding those decisions was our holding in *Betancourt* where we noted, with regard to advance publicity, that "[t]he deterrence value of any roadblock and its reasonableness for sobriety checks will be enhanced if given widespread advance publicity." *Id.* ¶ 13. In *Betancourt*, advance publicity concerning the sobriety roadblocks was disseminated to a local radio station for release.

{9}     In *State v. Olaya*, 1987-NMCA-040, 105 N.M. 690, 736 P.2d 495, filed on the same day as *Betancourt*, police officers were given permission to establish a roadblock at a location of their choice. "They were required to use reflectors, marked units, and a stop sign." *Olaya*, 1987-NMCA-040, ¶ 3. They were to stop all privately owned east bound vehicles in order to check for driver's licenses, registration, and proof of insurance. *Id.* There was no advance publicity. *Id.* ¶ 22. The Court applied the *Betancourt* guidelines, noted the lack of advance publicity, and held that "[b]ecause no one guideline is dispositive, and because there was substantial evidence to support the [district] court's conclusion that the officers in this case did not have or [did not] exercise unbridled discretion [that] the roadblock was valid." *Id*.

{10}    In *Bates*, law enforcement sent out a news release to the media identifying dates and location of the checkpoint. The defendant argued that the media either gave the wrong location, or that the information was generalized when it was simply stated that there would be stepped-up DWI checkpoints to deter drunk driving during the holiday weekend. 1995-NMCA-080, ¶ 5. Consistent with *Betancourt,* the Court first noted,"[i]n determining the reasonableness of a roadblock, all the factors must be considered, and none is dispositive but the role of supervisory personnel and the restrictions on discretion of field officers." *Bates*, 1995-NMCA-080, ¶ 22. In specifically addressing the advance publicity, the Court held that "[w]hether or not

5

there [was] advance publicity is not dispositive of the reasonableness of a DWI roadblock[,]" and the facts in that case "were legally sufficient to show the reasonableness of the roadblock under both the New Mexico and United States Constitutions." *Id.* ¶¶ 26-27 (citing *Bentancourt*, 1987-NMCA-039, ¶ 13).

{11} We again affirmed this principle, four months after *Bates*, in *State v. Madalena*, 1995-NMCA-122, 121 N.M. 63, 908 P.2d 756. We declared that "the facts and circumstances of each road block must be examined in light of the guidelines articulated in *Betancourt*." *Madalena*, 1995-NMCA-122, ¶ 33. In *Madalena*, the parties did not contest the lack of advance publicity. *Id.* ¶ 32. Instead, the defendant challenged the constitutionality of the entire practice of DWI checkpoints under Article II, Section 4 and Article II, Section 10 of the New Mexico Constitution. *Id.* ¶ 1. We held "that a sobriety checkpoint conducted in substantial compliance with the eight *Betancourt* factors is constitutional under the New Mexico Constitution." *Id.* ¶¶ 26, 32.

{12} In the present case, Sergeant Hinders attempted, but failed, to comply with the advance publicity requirement by e-mailing the radio station with a request for publication of the checkpoint, though the radio station never received it. Sergeant Hinders did not verify that the e-mail had been opened or received, did not have any personal knowledge of whether the checkpoint had been publicized, nor did he seek

to have the checkpoint publicized in the county newspaper. Whether Sergeant Hinders' attempt to generate advance publicity of this checkpoint satisfies the final *Betancourt* factor is a question for another day.

{13} Based on our longstanding case law, a lack of advance publicity, without more, is simply not sufficient to find that a DWI checkpoint constitutes an illegal seizure. We take this opportunity to reaffirm *Bates* and *Olaya* inasmuch as each case stands for the proposition that advance publicity, while beneficial from a deterrence perspective, is not dispositive with respect to the illegal search and seizure analysis under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. *See Bates*, 1995-NMCA-080, ¶ 26; *Olaya*, 1987-NMCA-040, ¶ 22. While *Betancourt* stated that the reasonableness for a sobriety checkpoint would be enhanced if given widespread advance publicity, we do not take this to mean that the last factor is a mere disposable accessory to the other seven factors resulting in either its wholesale disregard, or is it an invitation for potential abuse that would effectively remove it from the *Betancourt* analysis entirely.

**CONCLUSION**

{14} The advance notice factor is merely one of eight factors to be considered in determining the reasonableness of a checkpoint. Because no argument was made that the remaining *Betancourt* factors were not met, and that the advance publicity factor

7

is not dispositive, we hold that the checkpoint was constitutional. For the forgoing reasons, we reverse the district court's order granting Defendant's motion to suppress evidence.

{15}     **IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**MICHAEL D. BUSTAMANTE, Judge**