SITZ v DEPARTMENT OF STATE POLICE (ON REMAND)

Docket No. 131032. Submitted July 23, 1990, at Lansing. Decided April 20, 1992, at 9:40 A.M.

Rick Sitz and several other licensed Michigan drivers brought an action in the Wayne Circuit Court against the Department of State Police and its director, seeking a declaration that the department's sobriety-checkpoint program violates US Const, Am IV and Const 1963, art 1, § 11, and seeking an injunction against the use of sobriety checkpoints on state highways. Following a bench trial, the court, Michael L. Stacey, J., concluded that the sobriety-checkpoint plan violated US Const, Am IV and Const 1963, art 1, § 11 and permanently enjoined the defendants from implementing the plan. The defendants appealed. The Court of Appeals, GRIBBS, P.J., and HOLBROOK, JR., and N.J. LAMBROS, JJ., affirmed. 170 Mich App 433 (1988). The Michigan Supreme Court denied leave to appeal. 432 Mich 872 (1989). The United States Supreme Court reversed and remanded, holding that a state's use of highway sobriety checkpoints does not violate the Fourth and Fourteenth Amendments of the United States Constitution. *Michigan Dep't of State Police v Sitz,* 496 US —; 110 L Ed 2d 412 (1990).

On remand, the Court of Appeals *held:*

The sobriety checkpoints violate Const 1963, art 1, § 11.

1. The framers of Michigan's Constitution did not intend art 1, § 11 to permit the seizure of persons under the circumstances presented in this case. Art 1, § 11 properly is interpreted as affording greater rights than those found in the federal constitution.

2. At the time art 1, § 11 was adopted, federal case law generally required the government to prove reasonable suspicion for minimally intrusive seizures to be considered reasonable. Michigan case law also reveals a longstanding adherence to the principle that an officer may not indiscriminately stop an automobile absent some reasonable ground of suspicion that criminal activity is afoot.

3. Although the stop of a motor vehicle for investigatory

REFERENCES

Am Jur 2d, Privacy § 205; Search and Seizure §§ 16, 96, 111, 115.
Validity of routine roadblocks. 37 ALR4th 10.

purposes may be based upon fewer facts than those necessary to support a finding of reasonableness, . Michigan law still requires some facts as a basis for a particularized suspicion of criminal activity to justify a stop. Adoption of the recent federal standard permitting stops by roving roadblocks without a showing of reasonable suspicion results not only in a variance from prior federal law, but also in a substantial departure from the evolution of Michigan law regarding the stopping of motor vehicles without a showing of reasonable suspicion. Given the advent of such an enormous departure from prior Michigan law, compelling reason exists to interpret the Michigan Constitution as affording greater rights than those found in the federal constitution.

Affirmed.

GRIBBS, P.J., dissenting, stated that there are no compelling reasons to impose a higher standard of reasonableness for searches and seizures under Michigan's Constitution than that imposed by the federal constitution, and that the majority erred in that relief was granted on the basis of grounds not sought or argued by the plaintiffs, it ignored an applicable United States Supreme Court decision, and its reasoning that there must be specific facts that support a finding of particularized suspicion in order to justify a traffic stop already was rejected by the United States Supreme Court in this case.

1. SEARCHES AND SEIZURES — MOTOR VEHICLES — SOBRIETY CHECKPOINTS.

The sobriety checkpoint program of the Department of State Police, under which all motorists would be stopped at random checkpoints on state highways to be examined for signs of intoxication, violates art 1, § 11 of the Michigan Constitution (Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — MOTOR VEHICLES — INVESTIGATORY STOPS — PARTICULARIZED SUSPICION.

A motor vehicle may be stopped for investigatory purposes only where there is a particularized suspicion that criminal activity is afoot.

*Mark Granzotto, Deborah L. Gordon,* and *William Gage,* for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Thomas L. Casey,* Assistant Solicitor General, for the defendants.

Amici Curiae:

*Pepper, Hamilton & Scheetz* (by *Abraham Singer*), and *Roger Conner* and *Robert Teir,* for American Alliance for Rights and Responsibilities and Dr. C. Everett Koop.

*Rizik & Zintsmaster, P.C.* (by *Michael B. Rizik, Jr.*), for Mothers Against Drunk Driving Michigan.

ON REMAND

Before: GRIBBS, P.J., and HOLBROOK, JR., and McDONALD, JJ.

McDONALD, J. This case has been remanded by the United States Supreme Court for further proceedings not inconsistent with *Michigan Dep't of State Police v Sitz,* 496 US —; 110 S Ct 2481; 110 L Ed 2d 412 (1990). This Court previously affirmed the trial court's decision and held that Michigan's sobriety-checkpoint program violated the Fourth Amendment of the United States Constitution and therefore Const 1963, art 1, § 11. *Sitz v Dep't of State Police,* 170 Mich App 433; 429 NW2d 180 (1988), lv den 432 Mich 872 (1989), rev'd 496 US —; 110 S Ct 2481; 110 L Ed 2d 412 (1990). The United States Supreme Court reversed our decision and held a state's use of highway sobriety checkpoints does not violate the Fourth and Fourteenth Amendments of the United States Constitution. *Sitz,* 496 US —; 110 L Ed 2d 418. At issue here is whether sobriety checkpoints, while permitted by the United States Constitution, nevertheless violate the Michigan Constitution. We hold that they do.

The facts from which this search and seizure

question arises are not in dispute.[1] On May 17 and 18, 1986, the Saginaw County Sheriff's Department conducted a sobriety-checkpoint operation in Saginaw County. Nineteen officers were present at the checkpoint. During the approximately one-hour operation, 126 vehicles passed through the checkpoint. All vehicles were stopped and the drivers briefly examined for signs of intoxication. Two drivers were retained for sobriety field tests, only one was arrested for driving under the influence of alcohol. A third driver, who drove through the checkpoint without stopping, was also arrested for driving while under the influence of alcohol.

Thereafter, plaintiffs filed an action for declaratory judgment and injunctive relief. Defendants agreed to delay implementation of the sobriety-checkpoint program pending resolution of this case. Following trial, the trial court issued a sixty-page written opinion finding the sobriety checkpoint violated the Fourth Amendment of the United States Constitution. In reaching this conclusion, the court applied a balancing test derived from *Brown v Texas,* 443 US 47, 50-51; 99 S Ct 2637; 61 L Ed 2d 357 (1979). The trial court also concluded, on the basis of state law precedent, that the checkpoint violated art 1, § 11 of the Michigan Constitution.

On appeal, this Court affirmed, finding no basis for disturbing the trial court's findings. *Sitz,* 170 Mich App 444. In our previous opinion, we agreed with the trial court that, although there is a grave and legitimate state interest in curbing drunk driving, the sobriety-checkpoint program did not significantly further that interest and subjectively

---

[1] A full discussion of the facts and history underlying this case may be found in this Court's prior opinion, *Sitz v Dep't of State Police,* 170 Mich App 433; 429 NW2d 180 (1988), and the various Supreme Court Justices' opinions in *Michigan Dep't of State Police v Sitz,* 496 US —; 110 S Ct 2481; 110 L Ed 2d 412 (1990).

intruded on individual liberties. *Id.* at 439. Thus, the use of the checkpoint was found to violate the Fourth Amendment of the United States Constitution. Because the Michigan Constitution offers at least the same protection as the federal constitution, the trial court's finding that the use of the checkpoint violated the Michigan Constitution was also affirmed and the question whether art 1, § 11 offers greater protection than the Fourth Amendment to the federal constitution was not decided. *Id.* at 445.

In its opinion, the United States Supreme Court held the trial court and this Court properly found the *Brown* balancing test the appropriate measure to determine whether the checkpoint violated the federal constitution.[2] In cases involving seizures less intrusive than traditional arrests, the *Brown* balancing test calls for a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interests, and the severity of the interference with individual liberty. *Brown, supra.* In applying this test, the trial court concluded that, although the problems caused by drunk driving are of great public concern, sobriety checkpoints fail to effectively advance the public interest of combating the problems. The evidence at trial indicated checkpoints generally result in a very low arrest rate and therefore have a questionable deterrent value. Moreover, we note the lack of information provided regarding the arrest rate that would likely have resulted from use of the numerous officers present at the checkpoint in more traditional forms of law enforcement aimed at apprehending

[2] The Court noted that defendants properly conceded a Fourth Amendment "seizure" occurs when a vehicle is stopped at a checkpoint. 496 US —; 110 L Ed 2d 420.

drunk drivers.[3] In addition to finding the check-points only minimally effective in curbing drunk driving, the trial court found the overall intrusive-ness of the roadblocks to the citizens to be great. Although the objective intrusion was deemed slight because of the brief length of the actual stop,[4] the subjective intrusiveness was found to be substantial. Because the program calls for tempo-rary, rather than permanent, checkpoints, and the purpose is to search for violators of the criminal law, the court found a high potential for generat-ing fear and surprise in the motorists.[5]

Thus, given the low degree to which the check-point advanced the public interest in curbing drunk driving and the severity of the interference with individual liberty, the trial court found the checkpoint program violative of the Fourth Amendment of the federal constitution. As already noted, this Court previously affirmed the decision of the trial court, finding no basis upon which to set aside the court's findings and conclusions. If now writing on a clean slate, we would again agree with the findings of the trial court. However, the Supreme Court has ruled that improper con-sideration and weight was given the *Brown* factors in such a manner that we erred in concluding the

[3] It appears the majority of law enforcement, those involved in implementing the roadblocks, do not believe roadblocks are an effec-tive method with which to address the drunk-driving problem.

[4] The evidence indicated each stop and perusal was completed in seconds, however no evidence was presented regarding the effect of the natural backup of traffic caused by funneling all vehicles into one lane. Likewise, no consideration was given the inconvenience caused the oncoming traffic not subject to the checkpoint but nonetheless for safety purposes also funneled into one lane.

[5] We believe Justice Stevens accurately noted in his dissent in *Sitz,* 496 US —; 110 L Ed 2d 426, that surprise is a critical element of the operation of the checkpoints. This surprise and the fear generated by the operation of the checkpoints at night and for the purpose of apprehending criminals likewise leads us to conclude that the check-point's subjective intrusion on a person's liberty is substantial.

use of the checkpoint violated the Fourth and Fourteenth Amendments of the United States Constitution. The federal constitutionality of the checkpoint settled, we must now determine whether the checkpoint program, although found permissible under the federal constitution, is violative of art 1, § 11 of the Michigan Constitution. In other words, whether the Michigan Constitution affords its citizens greater rights than those provided by the federal constitution.

Generally, the Michigan Constitution is construed to afford the same rights as those given by the federal constitution. However, where there is compelling reason to do so, the Michigan Constitution may be construed in a manner that results in greater rights than those afforded by the federal constitution. *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983); *People v Collins,* 438 Mich 8; 475 NW2d 684 (1991).

In determining whether compelling reasons exist, several factors may be considered, including any significant textual differences in parallel provisions of the federal and state constitutions, state constitutional and common-law history, and state law preexisting the constitutional provision. Moreover, as our Supreme Court stated in *Collins, supra,* the beginning of the consideration should be the application of the fundamental principle of constitutional construction to determine the intent of the framers of the constitution and of the people adopting it. *Id.,* at 32.

We do not believe the framers of our constitution or the people adopting it intended that art 1, § 11 permit suspicionless seizures of persons under the circumstances presented in this case. Before the United States Supreme Court's decision in *United States v Martinez-Fuerte,* 428 US 543; 96 S Ct 3074; 49 L Ed 2d 1116 (1976), and thus at the

time art 1, § 11 was first adopted, federal case law generally required the government to prove that it had reasonable suspicion for minimally intrusive seizures to be considered reasonable. *Martinez-Fuerte* was the first and, until this suit, the only case wherein the Supreme Court upheld a program that subjects the general public to suspicionless seizures. 496 US —; 110 L Ed 2d 425 (BRENNAN, J., dissenting). Federal case law is replete with condemnation of suspicionless random stops of motorists for investigatory purposes. See, generally, *Delaware v Prouse,* 440 US 648; 99 S Ct 1391; 59 L Ed 2d 660 (1979); *United States v Brignoni-Ponce,* 422 US 873; 95 S Ct 2574; 45 L Ed 2d 607 (1975); *United States v Ortiz,* 422 US 891; 95 S Ct 2585; 45 L Ed 2d 623 (1975); *Almeida-Sanchez v United States,* 413 US 266; 93 S Ct 2535; 37 L Ed 2d 596 (1973).

Likewise, a review of Michigan case law regarding the issue of warrantless stops of vehicles reveals Michigan's longstanding adherence to the principle that an officer may not indiscriminately stop an automobile absent some reasonable grounds of suspicion that criminal activity is afoot. *People v Kamhout,* 227 Mich 172; 198 NW 831 (1924); *People v Roache,* 237 Mich 215; 211 NW 742 (1927). More recently, in *People v Whalen,* 390 Mich 672, 682; 213 NW2d 116 (1973), the Supreme Court established rules with respect to the stopping, searching, and seizing of motor vehicles and their contents:

> 1. Reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles.
> 2. Said reasonableness will be determined from the facts and circumstances of each case.
> 3. Fewer foundation facts are necessary to sup-

port a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved.

4. A stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police.

See also *People v Parisi,* 393 Mich 31; 222 NW2d 757 (1974) (warrantless stop of motor vehicle improper where no evidence of "suspicious activity" was offered nor any testimony presented providing a reasonable basis for stopping the automobile).

Although the stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness, the state of the law in Michigan still requires some facts constituting the basis for a particularized suspicion to justify a stop. Adoption of the recent federal standard permitting suspicionless stops by roving roadblocks results not only in a variance from prior federal law, but also in a substantial departure from the evolution of Michigan law regarding the warrantless stopping of motor vehicles. Given the advent of such an enormous departure from prior Michigan law, we believe compelling reason exists to interpret the Michigan Constitution as affording greater rights than those found in the federal constitution. Such a substantial departure, if appropriate, should be effected by our Supreme Court, not by this Court. This is especially true where, as here, the effectiveness of the roadblocks in question in preventing drunk driving is negligible, only one arrest after 126 stops.

Although we fully recognize the enormity of the problem caused by drunk driving, we do not believe the proposed elimination of the rights of

Michigan citizens to be free from suspicionless seizure a proper response to the problem. As succinctly stated by Justice Brandeis in his dissent in *Olmstead v United States,* 277 US 438, 479; 48 S Ct 564; 72 L Ed 944 (1928):

> Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding.

We find the indiscriminate suspicionless stopping of motor vehicles violative of art 1, § 11 of the Michigan Constitution.

Affirmed.

HOLBROOK, JR., J., concurred.

GRIBBS, P.J., *(dissenting).* I dissent. The majority relies on a number of the same federal cases that formed the basis of our previous opinion, in apparent disregard of the United State Supreme Court's pronouncement that our previous analysis of federal case law was in error.

In our previous opinion in this matter, we agreed with the trial court that, although there is a grave and legitimate state interest in curbing drunk driving, the sobriety-checkpoint program did not significantly further the public interest in curbing drunk driving and subjectively intruded on individual liberties. *Sitz v Dep't of State Police,* 170 Mich App 433, 439; 429 NW2d 180 (1988), lv den 432 Mich 872 (1989), rev'd 496 US —; 110 S Ct 2481; 110 L Ed 2d 412 (1990). We noted in our prior opinion that the United States Supreme Court had previously held that police on roving

patrol could not arbitrarily stop automobiles unless they were "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Sitz,* 170 Mich App 438, quoting *United States v Brignoni-Ponce,* 422 US 873, 884; 95 S Ct 2574; 45 L Ed 2d 607 (1975).

We also considered *United States v Martinez-Fuerte,* 428 US 543; 96 S Ct 3074; 49 L Ed 2d 1116 (1976), where the Court held that permanent checkpoints on major highways near the Mexican border were constitutional. We noted that

> the ability of a particular law enforcement technique to effectuate actual arrests was deemed a relevant factor by the United States Supreme Court in its analyses in *Martinez-Fuerte, supra,* p 554, and [*Delaware v*] *Prouse* [440 US 648, 660; 99 S Ct 1391; 59 L Ed 2d 660 (1979)]. [*Sitz,* 170 Mich App 442.]

We concluded that the trial court's finding that the checkpoint program was not an effective tool for arresting drunk drivers was not clearly erroneous. *Sitz,* 170 Mich App 442.

We then reviewed two factors from *Martinez-Fuerte* in our consideration of the degree of subjective intrusion caused by sobriety checkpoints: (1) the potential of the checkpoints to generate fear and surprise to motorists, and (2) the degree of discretion left to individual officers. Again, we felt the trial court had not clearly erred in concluding that checkpoints had the potential to generate fear and surprise. *Sitz,* 170 Mich App 444.

On the basis of our interpretation of prior United States Supreme Court decisions, we concluded that the checkpoint program was an unrea-

sonable seizure under the Fourth Amendment. In reversing and remanding this matter to this Court, the United States Supreme Court indicated that the trial court and this Court erred in our analysis of the federal cases applicable to this issue. Specifically, the United States Supreme Court found that we erred concerning the degree of "subjective intrusion" and that we erred in finding that the checkpoint program was not "effective" under the *Brown* test.

Despite the United States Supreme Court's conclusion that the checkpoint program does not violate federal standards and that this Court had improperly applied federal law concerning traffic stops, the majority blithely claims that "[f]ederal case law is replete with condemnation of suspicionless random stops of motorists for investigatory purposes." *Ante* at 697. I believe the majority's reliance on other federal precedent in this case is illusory at best and that it ignores the precedential effect of the United States Supreme Court opinion and order in this case.

Furthermore, it is perfectly clear that the majority construes the Michigan Constitution as providing a more stringent standard than the comparable federal provision. This is done in spite of the fact that plaintiffs, in this case, do not argue for a more stringent standard or seek relief under such a theory. Indeed, plaintiffs conceded in their brief and in oral argument that this case does not present

> a question of adopting a different, more stringent legal test than that formulated by the United States Supreme Court. Rather, this is merely a matter of applying the evidence presented at trial and the findings made by the trial court to the legal standard which the Supreme Court of the United States established.

Plaintiffs also acknowledged that this Court should evaluate this matter under the standards set by the United States Supreme Court, arguing only that we should reach a different result than did the Supreme Court. The majority scarcely addresses the issues actually raised by plaintiffs in this case.

Plaintiffs contend that there is no evidence of effectiveness in this case, where only one arrest was made after 126 cars were stopped. The majority agrees with plaintiffs with respect to this issue despite the express ruling to the contrary by the United States Supreme Court. Plaintiffs argue that "the number of arrests achieved through this program and its deterrent effect are inextricably linked." However, the United States Supreme Court specifically disapproved a "searching examination of effectiveness" and concluded that the 1.5 percent arrest rate during the Michigan checkpoint operation was sufficient:

> [A]n expert witness testified at the trial that experience in other States demonstrated that, on the whole, sobriety checkpoints resulted in drunken driving arrests of around 1 percent of all motorists stopped. 170 Mich App 441; 429 NW2d 183. *By way of comparison,* the record from one of the consolidated cases in *Martinez-Fuerte,* showed that in the associated checkpoint, illegal aliens were found in only *0.12 percent of the vehicles passing through the checkpoint.* See 428 US 554; 49 L Ed 2d 1116; 96 S Ct 3074. The ratio of illegal aliens detected to vehicles stopped (considering that on occasion two or more illegal aliens were found in a single vehicle) *was approximately 0.5 percent.* See *Ibid.* We concluded that this "record . . . provides a rather complete picture *of the effectiveness* of the San Clemente checkpoint", *ibid.,* and we sustained its constitutionality. *We see no justification for a different conclusion here.*

[*Sitz,* 496 US —; 110 L Ed 2d 423. Emphasis added.]

Plaintiffs also argue that sobriety checkpoints are unreasonably intrusive. Plaintiffs contend that this Court must consider the overall effect on legitimate traffic and suggest a number of potential extensions and abuses that could occur. However, as the United States Supreme Court noted in its opinion in this matter, the possibility of "unreasonable treatment of any person" is not an issue in this case, which involves only the threshold question whether sobriety checkpoints are "per se" or "facially" unconstitutional.

> It is important to recognize what our inquiry is *not* about. No allegations are before us of unreasonable treatment of any person after an actual detention at a particular checkpoint. . . .
> As pursued in the lower courts, the instant action challenges only the use of sobriety checkpoints generally. We address only the initial stop of each motorist passing through a checkpoint and the associated preliminary questioning and observation by checkpoint officers. Detention of particular motorists for more extensive field sobriety testing may require satisfaction of an individualized suspicion standard. [*Sitz,* 496 US —; 110 L Ed 2d 420.]

Finally, plaintiffs argue and the majority agrees that the proposed checkpoint roadblocks are more intrusive than the fixed roadblocks considered in *United States v Martinez-Fuerte, supra.* Once again, the United States Supreme Court expressly rejected this argument in its opinion in this case and concluded that "[t]he intrusion resulting from the brief stop at the sobriety checkpoint is for constitutional purposes indistinguishable from the

checkpoint stops we upheld in *Martinez-Fuerte."* *Sitz,* 496 US —; 110 L Ed 2d 422.

As the majority acknowledges, it is well established that the Michigan Constitution does not generally impose a higher standard of reasonableness for searches and seizures than that imposed by the federal constitution. *People v Nash,* 418 Mich 196, 214-215; 341 NW2d 439 (1983); *People v Armendarez,* 188 Mich App 61, 66; 468 NW2d 893 (1991); *People v Ragland,* 149 Mich App 277, 281; 385 NW2d 772 (1986). As our Supreme Court emphasized just last year in *People v Collins,* 438 Mich 8, 25, 27; 475 NW2d 684 (1991):

> Discerning the intent of the framers and the people who adopted Const 1963, art 1, § 11, this Court has held, in a line of decisions . . . that art 1, § 11 is to be construed to provide the same protection as that secured by the Fourth Amendment, absent "compelling reason" to impose a different interpretation.
>
> *   *   *
>
> [T]here is no evidence that those who later framed and adopted the 1963 Constitution had any intention of expanding the protection provided under Michigan's search and seizure provision beyond that secured by the Fourth Amendment of the federal constitution.

Our Supreme Court also gave considerable guidance in *Collins* regarding what might justify a finding of compelling reasons:

> [W]e turn now to consider whether in this case there is compelling reason to construe Const 1963, art 1, § 11 to prohibit law enforcement activity that otherwise is permissible under the Fourth Amendment. Although a number of appellate decisions have referred to the compelling reason standard, little in the way of guidance has been pro-

vided concerning its contours and meaning. Surely, the beginning of consideration must be the axiomatic statement of this Court in *Holland v Garden City Clerk,* 299 Mich 465, 470; 300 NW 777 (1941): "It is a fundamental principle of constitutional construction that we determine the intent of the framers of the Constitution and of the people adopting it." See also *Burdick v Secretary of State,* 373 Mich 578, 584; 130 NW2d 380 (1964).

We believe that compelling reason for an independent state construction might be found if there were significant textual differences between parallel provisions of the state and federal constitutions, and, particularly, if history provided reason to believe that those who framed and adopted the state provision had a different purpose in mind. As already noted, the . . . majority [in *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975)] placed no reliance upon textual differences between the two constitutions. Moreover, the language of art 1, § 11 is substantially similar to that of the Fourth Amendment, except for the anti-exclusionary proviso in the third sentence of § 11. [*Collins,* 438 Mich 31-32.]

Neither the majority nor the parties have pointed to textual differences or to a contrary purpose on the part of our constitution's framers. Nevertheless, the majority summarily concludes, "[w]e do not believe the framers of our constitution or the people adopting it intended that art 1, § 11 permit suspicionless seizures of persons under the circumstances presented in this case." *Ante* at 696. I do not believe the majority's concern with particularized suspicion and effectiveness rises to the "compelling reason standard" envisioned by the Michigan Supreme Court.

In conclusion, I disagree with the majority for three reasons. First, the majority grants relief on grounds not sought or argued by the parties. Even though the parties concede that this case does not

involve adopting a more stringent test than that created by the United States Supreme Court, the majority has decided that a more stringent test should apply under the Michigan Constitution.

Second, the majority essentially ignores the test set by the United States Supreme Court in *Brown v Texas,* 443 US 47, 50-51; 99 S Ct 2637; 61 L Ed 2d 357 (1979). Although the United States Supreme Court concluded that this Court had misapplied the *Brown* test, it is clear from its opinion in this case that the *Brown* test, as clarified by it, controls.

The *Brown* test involves weighing three factors. The first factor involves the gravity of the public concerns served by the seizure. The parties concede and this Court is well aware that drunk driving is one of our most serious public problems. The second *Brown* factor weighs the degree to which the seizure advances the public interests. The United States Supreme Court specifically stated that the effectiveness of the Michigan checkpoint program was adequate. Nevertheless, the majority opinion in this case concludes that the checkpoint program was not effective enough. The final factor noted in *Brown* concerns the severity of the interference with individual liberty. Again, the majority opinion disagrees with the United States Supreme Court's finding that the intrusion resulting from the brief stop at a sobriety checkpoint is minimal.

Finally, the majority emphasizes its belief that there must be specific facts that support a finding of particularized suspicion in order to justify a traffic stop. This same reasoning, in part, formed the basis of our earlier opinion in this case, 170 Mich App 438. The reasoning employed by the majority in this case has already been rejected by

the United States Supreme Court in its opinion reversing our earlier decision. I believe it is implicit in the United States Supreme Court opinion that the standard of particularized suspicion, while properly considered in cases involving roving patrol stops, is not appropriate in a checkpoint case like this one. *Sitz,* 496 US —; 110 L Ed 2d 421-422.

In light of the well-established precedent that the Michigan Constitution does not generally impose a higher standard of reasonableness for searches and seizures than is imposed by the federal constitution and finding no compelling reason to do so, I would decline to impose a standard different from that of the United States Supreme Court in this case. *Armendarez,* 188 Mich App 66. I do not believe the arguments posed by the majority justify a finding of compelling reasons. Accordingly, I would reverse.