768 A.2d 318

COMMONWEALTH of Pennsylvania, Appellee,

v.

David Ronald YASTROP, Appellant.

Supreme Court of Pennsylvania.

Argued May 2, 2000.

Decided March 26, 2001.

Michael E. Moyer, Allentown, for David Ronald Yastrop.

John Morganelli, District Attorney, Anthony Beltrami, Bethlehem, Bethany Zampogna, District Attorney's Office, Christian A. Fisanick, Special Assistant District Attorney, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

NEWMAN, Justice.

We granted allowance of appeal in this case to address whether a systematic roadblock set up to detect drunken drivers is constitutional under Article I, Section 8 of the Pennsylvania Constitution.[1] Because this Court has held previously that roadblocks like the one conducted in the present case are permissible under the Pennsylvania Constitution, we hold that a systematic roadblock established to identify drunken drivers, which adheres to certain guidelines, is constitutional.

## FACTS AND PROCEDURAL HISTORY

Police Officer Robert Hawke endeavored to institute a Driving Under the Influence (DUI) roadblock in the 1600 block of Main Street, Northampton Borough, Northampton County, Pennsylvania.[2] After reviewing Pennsylvania Department of Transportation records and information provided to him by local law enforcement authorities, Officer Hawke concluded that this location was a route likely to be traveled by drunken drivers. The area was one where drunk-driving accidents had occurred and where officers had made arrests for DUI in the past. Officer Hawke requested and received administrative authorization for the DUI roadblock, and notice of the time and place of the roadblock appeared in an area newspaper.

1. Article I, Section 8 of the Pennsylvania Constitution provides:
 Security from searches and seizures
 Section 8. The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.
 Pa. Const. art. I, § 8.

2. During the period in question, Officer Hawke served as the DUI Coordinator for the Lehigh Township Regional Checkpoint Expanded DUI Enforcement Program.

Supervised by Officer Hawke, Northampton Borough police officers conducted the roadblock from 11:30 p.m. on the evening of May 30, 1997 until 2:30 a.m. on the morning of May 31, 1997. The officers erected large signs to alert drivers of the roadblock ahead. The officers, using a predetermined, objective standard,[3] stopped drivers for approximately thirty seconds each and detained for field testing only those drivers who smelled of alcohol.

David Ronald Yastrop (Appellant) was driving an automobile in the 1600 block of Main Street in the early morning hours of May 31, 1997. Officers stopped Appellant at the roadblock and subsequently arrested him after they detected the smell of alcohol and after he failed field-testing designed to expose intoxication.

Prior to his trial on charges of DUI,[4] Appellant filed a pretrial motion seeking to suppress all the evidence procured as a result of the roadblock stop. Appellant averred that the roadblock amounted to an unconstitutional search and seizure. The trial court denied the suppression motion on April 3, 1998. Following a bench trial conducted on July 17, 1998, the trial court found Appellant guilty of DUI and sentenced him to serve not less than thirty days nor more than one-year imprisonment in Northampton County Prison. The Superior Court affirmed, and this Court allowed the present appeal.

## DISCUSSION

On appeal, Appellant advances two arguments in support of reversing the decision of the trial court that denied his motion to suppress. Appellant first argues that DUI roadblocks are *per se* unconstitutional under the heightened protections against unreasonable searches and seizures of Article I, Section 8 of the Pennsylvania Constitution. Alternatively, Appellant asserts that even assuming that DUI roadblocks are not *per se* unconstitutional under the Pennsylvania Constitution,

3. The officers stopped every car that came upon the roadblock.
4. 75 Pa.C.S.A. § 3731.

the police administered the DUI roadblock in the present case in an unconstitutional manner.

The question of whether DUI roadblocks were *per se* unconstitutional pursuant to the United States Constitution was addressed in *Michigan Dep't. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). The *Sitz* Court acknowledged that a roadblock was a seizure; thus, it focused its examination on whether such a seizure was unreasonable. In examining whether a DUI roadblock was an unreasonable seizure, the Court utilized a three-pronged balancing test derived from its decision in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). The United States Supreme Court "balanc[ed] the state's interest in preventing accidents caused by drunk drivers, the effectiveness of sobriety checkpoints in achieving that goal, and the level of intrusion on an individual's privacy caused by the checkpoints." *Sitz*, 496 U.S. at 449, 110 S.Ct. 2481. Ultimately, the Court concluded that the momentary seizure of a DUI roadblock was not unreasonable, stating that "the balance of the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the state program." *Id.* at 455, 110 S.Ct. 2481.

In *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992), this Court examined the constitutionality under our state Constitution of systematic, nondiscriminatory, nonarbitrary roadblocks instituted to detect registration, licensing, and equipment violations. As the United States Supreme Court did in *Sitz*, this Court recognized that a roadblock stop was a seizure. The focus of this Court in *Blouse*, therefore, was whether such a seizure was unreasonable under the heightened constitutional protections of our state Constitution.

The *Blouse* Court assessed the reasonableness of the roadblock in question using the balancing analysis of the United States Supreme Court. *See Brown, supra,* (utilizing balancing test to examine reasonableness of seizure not based on reasonable suspicion or probable cause); *United States v. Martinez–*

*Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (applying balancing test to scrutinize reasonableness of systematic border seizures not based on reasonable suspicion or probable cause); *see also Sitz,* 496 U.S. at 449, 110 S.Ct. 2481 (1990) (adopting lower court's characterization of *Brown* balancing test as "analytical framework prescribed by [the United States Supreme] Court for determining the constitutionality of seizures less intrusive than traditional arrests"). In balancing the minimal intrusion occasioned upon an individual by a systematic, nondiscriminatory, nonarbitrary roadblock against the Commonwealth's interest in insuring the safety of its highways, this Court concluded that a roadblock intended to detect registration, licensing, or equipment violations was reasonable under the Pennsylvania Constitution. *Blouse, supra.*

While *Blouse* did not specifically address drunken driver roadblocks, that decision relied considerably on this Court's previous decision in *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), which directly addressed the type of roadblocks at issue here.[5] In *Tarbert,* a plurality of this Court commented that roadblocks set up to detect drunken drivers would be constitutionally permissible, as long as authorities established and conducted the roadblocks in compliance with prescribed guidelines.

Our decision in *Blouse* expressly adopted the *Tarbert* plurality's rationale, along with the guidelines espoused by the plurality. *Blouse,* 611 A.2d at 1179–80 ("In applying *Tarbert* to the case *sub judice,* the rationale behind upholding the constitutionality of drunk driving roadblocks applies equally to all systematic roadblocks"); *see also Commonwealth v. Cass,* 551 Pa. 25, 709 A.2d 350, 360–61 (1998) (discussing balancing test derived from *Tarbert* and *Blouse* ). Thus, in reading *Blouse,* most notably its express adoption of the standards set forth in the Opinion Announcing the Judgment of the Court in

5. The precise issue of whether drunken driver roadblocks were constitutional under our state Constitution eluded the Court in *Tarbert.* However, "it is clear that of the six [justices] who participated [in *Tarbert* ], four [justices] expressed the view that systematic roadblocks are constitutional." *Blouse,* 611 A.2d at 1179.

*Tarbert,* it is clear that this Court has already concluded that roadblocks like the present one are not *per se* unconstitutional in this Commonwealth.

This view is consistent with the view held by the vast majority of our sister jurisdictions, which have recognized DUI roadblocks as a constitutional and necessary tool of law enforcement and deterrence. *See People v. Rister,* 803 P.2d 483 (Colo.1990); *State v. Record,* 150 Vt. 84, 548 A.2d 422 (1988); *Ingersoll v. Palmer,* 43 Cal.3d 1321, 241 Cal.Rptr. 42, 743 P.2d 1299 (1987); *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174 (1983); *State v. Bates,* 120 N.M. 457, 902 P.2d 1060 (1995). Sharing this mainstream view are many states that, like this one, extend greater protections against unreasonable searches and seizures under their state constitutions than those extended by our shared constitution. *See State v. Downey,* 945 S.W.2d 102 (Tenn.1997); *Lowe v. Commonwealth,* 230 Va. 346, 337 S.E.2d 273 (1985); *Commonwealth v. Trumble,* 396 Mass. 81, 483 N.E.2d 1102 (1985); *Little v. State,* 300 Md. 485, 479 A.2d 903 (1984); *State v. Boisvert,* 40 Conn.App. 420, 671 A.2d 834 (1996).

In support of his position, Appellant draws our attention to other states that have rejected DUI roadblocks based on their state constitutions. He notes that the Supreme Court of Michigan stated: "This court has never recognized the right of the state, without any level of suspicion, whatsoever, to detain members of the population at large for criminal investigatory purposes." *Sitz v. Dept. of State Police,* 443 Mich. 744, 776, 506 N.W.2d 209, 223. The Rhode Island Supreme Court reached the same conclusion in *Pimental v. Dept. of Transportation,* 561 A.2d 1348 at 1353 (R.I.1989):

We believe that allowing such roadblocks or checkpoints would diminish the guarantees against unreasonable searches and seizures contained in the Rhode Island Constitution. It is illogical to permit law enforcement officers to stop fifty or a hundred vehicles on the speculative chance that one or two may be driven by a person who has violated the law in regard to intoxication....

In reaching this conclusion, we agree that the state has a compelling interest in detecting drunk drivers. It is well beyond dispute that drunk drivers are a grave menace to the public and that stronger measures are needed to cope with this problem.... [T]he state [also] has a significant interest in apprehending and bringing to punishment individuals who commit other serious criminal offenses, such as murder, robbery, burglary and drug selling, to mention a few.

However, it would shock and offend the framers of the Rhode Island Constitution if we were to hold that the guarantees against unreasonable and warrantless searches and seizures should be subordinated to the interest of efficient law enforcement. Once this barrier is breached in the interest of apprehending drivers who violate sobriety laws, the tide of law enforcement interest could overwhelm the right to privacy. We decline to take the step of approving roadblocks, even for the purpose of apprehending drunk drivers.

In *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), the United States Supreme Court held that an Indianapolis checkpoint program that had as its main purpose the interdiction of illegal narcotics, violates the Fourth Amendment requirement that searches and seizures be reasonable. The Court recognized that it has upheld brief, suspicionless searches at fixed checkpoints to intercept illegal aliens, *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) and at highway checkpoints to detect drunk drivers, *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). However, the Court noted:

We have never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing. Rather, our checkpoint cases have recognized only limited exceptions to the general rule that a seizure must be accompanied by some measure of individualized suspicion.... [E]ach of the checkpoint programs that we have approved was designed primarily to serve purposes

closely related to the problems of policing the border or the necessity of ensuring roadway safety. Because the primary purpose of the Indianapolis narcotics checkpoint program is to uncover evidence of ordinary criminal wrongdoing, the program contravenes the Fourth Amendment.

*Edmond* at 454. The Court recognized that the DUI roadblocks in *Sitz* were "clearly aimed at reducing the immediate hazard posed by the presence of drunk drivers on the highways, and there was an obvious connection between the imperative of highway safety and the law enforcement practice at issue." *Edmond* at 453. We believe that the distinction the United States Supreme Court has drawn between suspicionless searches designed to remove drunk drivers from the road, and those intended to detect ordinary criminal activity, sufficiently protect citizens from the untoward results that the Rhode Island Supreme Court feared in *Pimental.*

 Therefore, as a matter of *stare decisis,* and in recognition of the overwhelming authority in support of DUI roadblocks, we conclude that DUI roadblocks are not *per se* offensive to the Pennsylvania Constitution. The balancing analysis performed by the *Blouse* Court in the context of roadblocks established to detect registration, licensing, and equipment violations is equally availing with respect to the DUI roadblock at issue in the present case. As such, we affirm our decision in *Blouse* and extend that decision to encompass roadblocks instituted for the purpose of detecting drunken drivers.

Appellant also asserts that even if DUI roadblocks are not *per se* unconstitutional, the police officers established and conducted the roadblock at issue in this case in an unconstitutional manner. In support of this argument, Appellant directs this Court's attention to the guidelines first established in *Tarbert* and subsequently adopted in *Blouse.* In essence, Appellant contends that the police officers failed to adhere to various aspects of the *Tarbert–Blouse* guidelines and that, therefore, this particular roadblock was unconstitutional.

In *Tarbert*, this Court offered the following guidelines to insure the constitutionality of a DUI roadblock:

[T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of the roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be traveled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with the objective standards prefixed by administrative decision.

*Tarbert*, 535 A.2d at 1043; *see also Blouse*, 611 A.2d at 1180 (adopting *Tarbert* guidelines in context of non-DUI roadblock).

Appellant submits that the DUI roadblock at issue here failed to adhere to the *Tarbert–Blouse* criteria on numerous grounds. To begin, Appellant argues that the roadblock involved more than a momentary stop and was not ascertainable from a reasonable distance or otherwise made knowable in advance. In addition, Appellant argues that the roadblock violated the *Tarbert–Blouse* standards because the decision to hold the roadblock, as well as the decision as to its time and place, were not reserved for prior administrative approval and because the question of which vehicles to stop was not administratively fixed with objective standards. Finally, Appellant

contends that the police officers failed to establish that the route and time selected for the roadblock were such that it was likely that drunken drivers would be traveling this route at the time of the roadblock.

Substantial compliance with the *Tarbert–Blouse* guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level. *Blouse*, 611 A.2d at 1180 (citing *Tarbert*). Thus, where the trial court's factual findings support the conclusion that the roadblock substantially complied with the guidelines, and where the trial court's findings are premised on sufficient evidence of record, this Court will not disturb the trial court's conclusion of substantial compliance.

In the present case, Officer Hawke testified that his research revealed that this location was a route likely to be traveled by drunken drivers because the area was one where drunk-driving accidents had occurred and where officers had made DUI arrests in the past. In addition, Officer Hawke testified that, based on this information, he requested and received administrative authorization for the DUI roadblock. With regard to the conducting of the roadblock, Officer Hawke stated that the officers erected large signs to alert drivers of the roadblock ahead. Moreover, the officers stopped every car that came upon the roadblock, as was administratively approved prior to the police officers instituting the roadblock. Officer Hawke also testified that the police officers stopped drivers for approximately thirty seconds each and detained for field testing only those drivers who smelled of alcohol.

This testimony clearly supports the conclusion of the trial court that the police officers established and conducted the DUI roadblock in compliance with the *Tarbert–Blouse* guidelines. Accordingly, Appellant's argument that police acted in an unconstitutional manner has no merit.

## CONCLUSION

In conclusion, we hold that systematic, nondiscriminatory, nonarbitrary roadblocks for the purpose of detecting

drunken drivers, if established and conducted in substantial compliance with the *Tarbert–Blouse* guidelines, are constitutional under Article I, Section 8 of the Pennsylvania Constitution.

Justice CASTILLE joins this opinion.

CAPPY, J., files a concurring opinion.

SAYLOR, J., files a concurring opinion in which CASTILLE, J., joins.

FLAHERTY, C.J., files a dissenting opinion in which ZAPPALA, J., joins.

NIGRO, J., files a dissenting opinion in which ZAPPALA, J., joins.

CAPPY, Justice, concurring.

Although I am in accord with the decision of the Majority, I write separately to articulate my position on the concept of general suspicionless searches in Pennsylvania.

I joined the dissent in *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992). At that time, I agreed with the position, articulated by then Mr. Justice Flaherty, now Mr. Chief Justice Flaherty, and Mr. Justice Zappala, that suspicionless searches were incompatible with the protections afforded the citizens of this Commonwealth under Article I, § 8 of the Pennsylvania Constitution. That position failed to garner a majority and the concept of general suspicionless searches became the law of this Commonwealth. Acknowledging that *Blouse* was the law, I followed the constitutional analysis set forth therein in *Commonwealth v. Cass,* 551 Pa. 25, 709 A.2d 350 (1998). I penned an opinion in *Cass* recognizing that certain searches could meet constitutional criteria under the reasonableness balancing test as articulated by the federal courts in *Vernonia School District, 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), *Michigan v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357

(1979) and *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

With the passage of time, I have come to accept the necessity for suspicionless searches aimed at a compelling state interest. (The everyday occurrence of walking through a metal detector at the airport readily comes to mind). My acceptance stemmed from the belief that the searches will be conducted with minimal intrusion, interfere with a limited privacy interest, and are necessitated by the fact that traditional law enforcement techniques are inadequate to address the compelling state interest at hand.[1] In my mind, this framework meets the necessary balance of competing interests and offers the least offense to established principles of individual liberty and privacy.

However, I must acknowledge that both Mr. Justice Nigro in his dissent and Mr. Justice Saylor in his concurrence raise an important question. This court accepted roadblocks in the first place, as a legitimate means to combat the dangers of drunk driving where traditional law enforcement techniques failed. With the advantage of hindsight, 'can it really be stated that roadblocks satisfy this compelling state interest in a more efficient and effective manner than traditional law enforcement techniques? The balancing test established in *Blouse* was never intended to grant a license for the indiscriminate use of roadblocks in perpetuity if the purpose of those roadblocks is not met. The idea of general suspicionless searches is an anomaly. In order to justify such massive law enforcement actions, which admittedly interrupt individual liberty and privacy, there is more to balancing this equation than simply pitting the state interest against the individual interest. There must be empirical proof that this manner of search is effective where traditional methods of law enforcement are not.

1. As originally identified in *Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), the three factors considered in assessing the reasonableness of a general suspicionless search are 1) the strength of the public interest in effectively combating the problem, 2) the extent of the invasion of the citizen's privacy and 3) the ability to achieve acceptable results by other means. *Id.,* 535 A.2d at 1039.

In this case, Mr. Justice Nigro looks to statistics nationwide then cites to the numbers of this specific roadblock, 300 cars stopped, 3 DUI arrests, and declares the roadblock for DUI purposes ineffectual for all times. I am unconvinced that this is the appropriate manner for resolving this question.

Mr. Justice Saylor raises the issue, seeking information on the essential components of the balancing test. Upon review, I must agree with Mr. Justice Saylor that insufficient empirical information exists in this record to resolve the issue. However, I am convinced that it is a question that we as a court must eventually confront if law enforcement intends to continue using general searches as a tool in their arsenal. As the eloquent opinion offered by Madame Justice Newman is unable to address this issue as the record fails to provide sufficient data, I join the result therein and the concurrence of Mr. Justice Saylor.

SAYLOR, Justice, concurring.

I agree with the dissent that the enhanced privacy interests under Article I, Section 8 of the Pennsylvania Constitution are implicated by the law enforcement practice of conducting systematic stops of members of the traveling public to enforce the prohibition against driving while intoxicated. Nevertheless, I join the majority's disposition, as I do not view the present case as an appropriate vehicle in which to consider overturning the precedential rulings of *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), and *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992).

In assessing the reasonableness of DUI roadblocks, I follow the majority's approach of employing the balancing test articulated by the United States Supreme Court in *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 449, 110 S.Ct. 2481, 2484, 110 L.Ed.2d 412 (1990), and previously applied by this Court in *Blouse,* 531 Pa. at 169–70, 611 A.2d at 1178. That test requires "balancing of the state's interest in preventing accidents caused by drunk drivers, the effectiveness of sobriety checkpoints in achieving that goal, and the level of intrusion on an individual's privacy caused by the checkpoints." *Sitz,*

496 U.S. at 448–49, 110 S.Ct. at 2484. Because both the state's interest in curbing drunken driving and the protection of individual privacy interests are compelling policy considerations which are in competition in this setting,[1] the third salient factor, the effectiveness of sobriety checkpoints, assumes a heightened degree of importance. In the present case, however, Appellant failed to present any significant empirical evidence concerning the effectiveness inquiry; rather, the only record evidence bearing upon this question was anecdotal, namely, the experience resulting from the single roadblock at which Appellant was stopped. *Compare State v. Church*, 538 So.2d 993, 997 n. 16 (La.1989) (citing statistical evidence that included roadblocks conducted from December of 1986 to August of 1987 in concluding that the intrusion was of marginal effectiveness). On this record, therefore, I would merely affirm the order of the Superior Court based upon current precedent, while reserving decision upon its wisdom for a case in which the record is properly and fully developed.

Justice CASTILLE joins this concurring opinion.

FLAHERTY, Chief Justice, dissenting.

I dissent respectfully, yet vehemently and earnestly.

I fully share with my colleagues an inescapable awareness of the danger created by drunk drivers. I do not in any way deprecate the very real hazard of this crime, as well as the enormous cost in human suffering which flows from those who persist in driving while intoxicated. As for invoking this hazard as a constitutional ground for suspending the most fundamental rights of Pennsylvania citizens, however, I must part company with the majority. Furthermore, as a practical matter roadblocks are an inefficient weapon in combating drunk driving. Hundreds of motorists are stopped to detect few, if any, violators.

---

1. By contrast, under the Fourth Amendment, the intrusion of the roadblock upon individual privacy has been characterized as "slight." *See Sitz,* 496 U.S. at 451, 110 S.Ct. at 2486.

The central premise supporting the holding of the majority is the analytically indefensible distinction between "ordinary" crimes like premeditated murder and special crimes like drunk driving. Searches and seizures to prevent the former require probable cause or at least individualized suspicion under our constitution but the latter do not. This distinction was expounded by the United States Supreme Court in *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) and is now, improvidently in my view, followed by this court.

The United States Supreme Court explained that under what appears to be a somewhat toothless Fourth Amendment to the United States Constitution, "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d at 340. However, "regimes of suspicionless searches where the program was designed to serve 'special needs, beyond the normal need for law enforcement,'" the usual rule does not apply. *Id.* Thus, in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), the court upheld suspicionless seizures of motorists at a sobriety checkpoint aimed at removing drunk drivers from the road. The court balanced the rights protected by the Fourth Amendment and held that "the immediate hazard posed by the presence of drunk drivers on the highways," "the imperative of highway safety," "the gravity of the drunk driving problem," and "the magnitude of the State's interest in getting drunk drivers off the road," *Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d at 342, justified suspending the Fourth Amendment prohibition against warrantless searches and seizures without probable cause or at least individualized suspicion of criminal wrongdoing.

My understanding of Pennsylvania constitutional jurisprudence is that the balancing of the state's interest in crime prevention against the constitutional rights of citizens has already been performed by the constitution. Our constitution simply does not permit searches and seizures without probable cause or individualized suspicion, no matter how grave the

current menace appears to the law enforcement community or how imperative it seems to end the immediate hazard.

The constitutional clause at issue, Article I, section 8:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

was in our state constitution of 1776 and has remained unchanged since that time. It originated in the body of the constitution, not in a bill of rights added to the constitution in the form of an amendment. Mr. Justice Cappy elucidated its history and purpose in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 897 (1991):

· The requirement of probable cause in this Commonwealth thus traces its origin to its original Constitution of 1776, drafted by the first convention of delegates, chaired by Benjamin Franklin. The primary purpose of the warrant requirement was to abolish "general warrants," which had been used by the British to conduct sweeping searches of residences and businesses, based upon generalized suspicions. Therefore, at the time the Pennsylvania Constitution was drafted in 1776, the issue of searches and seizures unsupported by probable cause was of utmost concern to the constitutional draftsmen.

Moreover, as this Court has stated repeatedly in interpreting Article I, Section 8, that provision is meant to embody a strong notion of privacy, carefully safeguarded in this Commonwealth for the past two centuries. As we stated in [*Commonwealth v.*] *Sell* [504 Pa. 46, 65, 470 A.2d 457, 467 (1989)]: "the survival of the language now employed in Article I, Section 8 through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy first adopted as part of our organic law in 1776 continues to enjoy the mandate of the people of this Commonwealth."

The zeal and constancy with which the Supreme Court of Pennsylvania has enforced this clause over the years is totally inconsistent with the majority's holding today. If searches and seizures to prevent "ordinary" crimes like murder require probable cause, how can the prevention of drunk driving require less?

The majority quotes but dismisses the concern expressed by the Rhode Island Supreme Court:

> However, it would shock and offend the framers of the Rhode Island Constitution if we were to hold that the guarantees against unreasonable and warrantless searches and seizures should be subordinated to the interest of efficient law enforcement. Once this barrier is breached in the interest of apprehending drivers who violate sobriety laws, the tide of law enforcement interest could overwhelm the right to privacy. We decline to take the step of approving roadblocks, even for the purpose of apprehending drunk drivers.

*Pimental v. Dept. of Transportation*, 561 A.2d 1348, 1353 (R.I.1989). The reason roadblocks do not threaten the right to privacy in Pennsylvania, according to the majority, is that it is still unconstitutional, without probable cause, to seize any thing to prevent "ordinary" crimes like murder; it is only with respect to special crimes like drunk driving that the requirement of probable cause is being abandoned. That, in my view, is a classic non sequitur.

Our law recognizes that the security and privacy of the person, and the freedom to travel without restriction, are hallmarks of our culture. Vast areas of the world, regrettably, stand in marked contrast: travel is routinely restricted and roadblocks for any government purpose are unremarkable. Sadly, the need to repudiate that model in this commonwealth has eluded the majority. The goal of efficient law enforcement cannot justify diminishing our constitutional rights.

This case brings into question the constitutionality of the 1985 amendment to 75 Pa.C.S. § 6308(b) which added the

clause permitting a "systematic program of checking vehicles or drivers," eliminating the requirement of "articulable and reasonable grounds to suspect a violation." Section 6308(b), when it required articulable and reasonable grounds to suspect a violation, satisfied the requirement of probable cause. As presently amended, it does not. The very essence and intent of a roadblock is to stop motorists *without* probable cause. This is antithetical to the Pennsylvania constitution. The use of roadblocks to enforce the motor vehicle code patently violates the Pennsylvania constitution.

Mindful of the longstanding jurisprudential principle of institutional integrity acting to impose a certain reluctance in overruling precedent recently established, instances arise where after rethinking, such a recent precedent is seen as fundamentally inconsistent with other precedent in an area of the law, and the more recent precedent must give way for readjustment. This is such an instance. *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992), was wrongly decided and should be overruled.

Because the majority, with every good intention, has failed to do so the citizens of Pennsylvania in large numbers will feel the sting of this now-sanctioned violation of a valuable constitutionally protected right—flashlights in the faces of the elderly, children frightened by the questioning, indeed the mere presence, of uniformed officers, travel impeded and delayed, privacy invaded without probable cause or even reasonable suspicion, the freedom from which has heretofore been a right taken for granted in a free society as such has traditionally been understood in Pennsylvania. Alas, a crack in the wall—a hole in the dike—how far will it go?

The words of Sir Thomas Moore come to mind: "What are we to do if those chasing after devils decide to chase after us?" History answers that question quite clearly I fear.

Justice ZAPPALA joins this dissenting opinion.

NIGRO, Justice, dissenting.

While I strongly agree with the majority that the Commonwealth has a clear and compelling interest in promoting highway safety and keeping drunk drivers off the road,[1] I must respectfully dissent because I cannot agree with the majority's conclusion that systematic DUI roadblocks are a necessary tool of law enforcement and deterrence. While there can be no doubt that drunk driving presents a grave danger and threatens the safety of all drivers, passengers, and pedestrians, there are, in my view, more efficient and less intrusive ways to address the scourge of drunk driving. I am confident that the Commonwealth's trained law enforcement officers can spot violators and validly arrest drunk drivers without having to stop all traffic and unjustifiably intrude on the lives of law-abiding drivers.

Unlike the majority, I believe DUI roadblocks are a waste of limited resources and promote inefficient law enforcement because police officers are forced to spend innumerable hours stopping hundreds of vehicles for a comparatively low number of DUI arrests. It defies common sense to argue that by consolidating police resources on one section of one street, the police can catch more drunk drivers. This logic somehow presumes that drunk drivers will voluntarily line up at pre-determined checkpoints. The more realistic presumption, however, is that an unknown number of drunk drivers who would have easily attracted the attention of trained law officers on routine patrol evade detection simply by using roads other than those targeted for DUI roadblocks. *See* Jon M. Ripans, Comment, *Michigan Department of State Police v. Sitz: Sober Reflections on How the Supreme Court has Blurred the Law of Suspicionless Seizures*, 25 GA.L.REV. 199, 215 (1990) (DUI roadblocks may in fact increase drunk driving fatalities because drunk drivers may use poorly lit back roads to avoid pre-determined and announced roadblocks).

1. *See* 4 WAYNE R. LAFAVE, SEARCH & SEIZURE § 10.8(d) (3d ed.1996) ("there is no denying the fact that there is a very strong societal interest in dealing effectively with the problem of drunken driving").

Simply looking at the facts of the instant case confirms the irrationality of using DUI checkpoints. Only three DUI arrests were made from the three hundred vehicles stopped at the roadblock over a three-hour period. N.T, 3/13/98, at 48–49. Unfortunately, this inefficiency is not an isolated example. *See e.g. Ascher v. Commissioner of Public Safety*, 519 N.W.2d 183, 184, 187 (Minn.1994) (state did not articulate persuasive reason for disregarding the standard requirement of individualized suspicion when only 1.4% of vehicle stops at roadblock resulted in DUI arrests); Nadine Strossen, *Michigan Department of State Police v. Sitz: A Roadblock to Meaningful Judicial Enforcement of Constitutional Rights*, 42 HASTINGS L.J. 285, 287 (1991) (data from both the Michigan roadblock in *Sitz* and other jurisdictions consistently reveal that fewer than 1% of drivers passing through such roadblocks are arrested for DUI). In my view, the argument that DUI roadblocks promote efficient law enforcement pays specious lip service to the problems of drunk driving.[2] *See Pimental v. Department of Transp.*, 561 A.2d 1348, 1352 (R.I.1989) (not logical to allow police "to stop fifty or a hundred vehicles on the speculative chance that one or two may be" drunk drivers). While the high visibility of DUI roadblocks may be a public relations success for the police, the roadblocks do little to protect the public from the problem of drunk drivers.[3] *See Sitz v. Department of State Police*, 193 Mich.App. 690, 485 N.W.2d 135, 137 n. 2 (1992), *aff'd*, 443 Mich. 744, 506 N.W.2d 209 (1993)(the majority of law enforcement involved in implementing DUI

---

2. In addition, the administrative requirements of DUI roadblocks expound police inefficiency. The time spent deciding where to place roadblocks would be better spent patrolling the roads catching actual drunk drivers, rather than speculating where a few drunk drivers, out of hundreds of cars stopped, may be caught.

3. "[S]obriety checkpoints are elaborate, and disquieting, publicity stunts." *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 475, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (Stevens, J., dissenting). In *Sitz*, Justice Stevens noted that over a period of several years, the state of Maryland conducted 125 DUI checkpoints and that of the 41,000 motorists passing through those checkpoints, only 143 persons (0.3%) were arrested. *Id.* at 461, 110 S.Ct. 2481. He compared this figure to the 71,000 DUI arrests made *without* DUI checkpoints in Michigan in one year alone. *Id.* at 462, 110 S.Ct. 2481.

roadblocks do not believe that roadblocks are an effective method of addressing the problem of drunk driving).

Contrary to the majority, I do not believe that DUI roadblocks act as a deterrent to drunk driving. In my view, to effectively deter drunk drivers, the obvious remedy is to catch more drunk drivers by utilizing routine police patrols and roving DUI patrols, rather than using one pre-determined and pre-announced location. *See State v. Henderson,* 114 Idaho 293, 756 P.2d 1057, 1061 (1988) (DUI roadblocks held invalid due in part to testimony of police officers that more drunk drivers would be caught by routine patrols than by the use of roadblocks, while using the same amount of police resources; a well-publicized program of roving patrols is the best deterrent to drunk drivers); *State v. Koppel,* 127 N.H. 286, 499 A.2d 977 (1985) (1,680 vehicles stopped at 47 roadblocks resulted in only 18 DUI arrests, while during the same time period 175 arrests were made by traditional methods of roving patrols); Nadine Strossen, *Michigan Department of State Police v. Sitz: A Roadblock to Meaningful Judicial Enforcement of Constitutional Rights,* 42 HASTINGS L.J. 285, 287 (1991) (noting that law enforcement personnel and other experts concluded sobriety checkpoints are less effective in detecting and deterring drunk driving than roving patrols). Rather than effectively deterring drunk driving, DUI roadblocks merely squander the limited resources available to law enforcement.

By extending *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992), to DUI roadblocks, the majority concludes that the Commonwealth's interest in catching and deterring drunk drivers outweighs the minimal intrusion imposed on drivers subjected to DUI roadblocks. In my opinion, however, the majority improperly restricts its focus to the privacy invasion of each individual motorist as he or she physically passes through a single checkpoint. The majority stresses that the motorists in the instant case were only stopped for an average of thirty seconds. The majority then balances the "minimal intrusion" of a thirty-second stop against the Com-

monwealth's cumulative interest in catching and deterring drunk drivers.[4] A fairer balance would weigh the actual expected alleviation of the problem of drunk driving against the cumulative intrusion into the privacy interests of all motorists. *See City of Seattle v. Mesiani*, 110 Wash.2d 454, 755 P.2d 775, 778 (1988)(the most common fallacy in "balancing" is to compare the entire cumulative interest of the state's policy with one individual's interest in freedom from the specific intrusion).

In my view, the majority underestimates the intrusion that DUI roadblocks pose to the cumulative interests of all motorists in the Commonwealth. DUI roadblocks involve more than the mere inconvenience of being stopped for a short period of time. The majority fails to account for the time that innocent and law-abiding citizens spend stuck in the backlog of traffic waiting to pass through a roadblock.[5] Furthermore, the same individuals can be repeatedly subjected to the same intrusions time and time again, further increasing the intrusion into the privacy interests of law-abiding motorists.

When the cumulative interests of all motorists is weighed against the Commonwealth's interest in keeping drunk drivers off the roads, it becomes clear that DUI roadblocks are not the least intrusive means of addressing the scourge of drunk driving. Instead, in my view, utilizing roving patrols by trained police officers is a much more effective way of catching and deterring drunk drivers. Since I cannot condone the use of relatively ineffective suspicionless DUI roadblocks, which I

4. Clearly the Commonwealth not only has a weighty interest in eradicating drunk driving, but also in detecting and deterring *all* crime. Under the majority's analysis, however, a further extension of *Blouse* may improperly result in similar roadblocks being used to stop and question all motorists regarding other crimes, such as possession of narcotics or possession of stolen property. *See State v. DeBooy*, 996 P.2d 546, 551 (Utah 2000) (holding unconstitutional a DUI checkpoint that was "less a highway safety measure, and more a pretext to stop all vehicles to search for any and all violations of the law").

5. This is particularly true given that DUI roadblocks are typically set up pursuant to administrative procedures that predict heavily traveled roads likely to be used by drunk drivers.

believe also improperly intrude on the lives of law-abiding citizens, I must respectfully dissent.

Justice ZAPPALA joins in the dissenting opinion.