This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **NO. 32,700**

**TERESE SANDOVAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Samuel L. Winder, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Vicki W. Zelle, Assistant Appellate Defender, Metro Appeals Division
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

{1}     Defendant appeals from the district court's affirmance of her metropolitan court bench trial DWI conviction. [RP 85]  Our notice proposed to affirm and Defendant filed a memorandum in opposition.  We remain unpersuaded by Defendant's arguments and therefore affirm.

{2}     Defendant continues to argue that the DWI checkpoint was unconstitutional. As fully detailed in our notice, *City of Las Cruces v. Betancourt*, 1987-NMCA-039, 105 N.M. 655, 735 P.2d 1161, ¶ 6, lists eight factors for determining the reasonableness of a roadblock, and in this case Defendant's challenge to the constitutionality of the checkpoint is premised on her continued assertion that it failed to satisfy the *Betancourt* factors for location and safety.   [DS 7; MIO 2]

{3}     We address first Defendant's continued challenge to the checkpoint's location. [DS 7]  In choosing the checkpoint's location, Sergeant McDonald relied on his own experience with the location, as well as on traffic-related statistics gathered by the New Mexico DWI Resource Center (Resource Center) [DS 7], a nonprofit organization with the mission of reducing the incidence of DWI.  [RP 80]  The statistical information provided by the Resource Center indicated that the selected location had a higher concentration of alcohol-related accidents than other locations in the city. [RP 75]   For the reasons articulated in our notice, we  conclude that the

statistical information providing that the location has a high incidence of alcohol-related accidents was an effective means to show the reasonableness of the location.

{4} In concluding that the location was reasonable, we acknowledge Defendant's continued argument challenging the "neutrality" of the statistical traffic information gathered by the Resource Center [MIO 2, 4], due to its status as a private entity with a mission to combat DWI. [DS 4; MIO 2, 4, 5] We again emphasize that, while a location may not be chosen to target a particular group of people based on their minority status [MIO 7], it may be chosen to facilitate its purpose, to apprehend DWI drivers. Here, there is no indication that the validity or accuracy of the statistical data was somehow compromised by the mission of the Resource Center to eradicate DWI. To the contrary, if the Resource Center's gathered information was inaccurate, this would only serve to impede its own mission, since it provided the data to officers to aid in targeting areas with high alcohol-related accidents for purposes of selecting checkpoint locations and apprehending the greatest number of DWI drivers.

{5} We further acknowledge Defendant's continued challenge to the validity of the data provided by the Resource Center [MIO 2], on the basis that the officer did not know how the Resource Center "translated the data or whether it correctly translated the data" as provided by a "UNM traffic related study." [DS 4; MIO 4-5] While the

underlying "foundational" information behind the data was not provided by the officer [MIO 9], the data was nonetheless a reasonable matter for the officer to consider when choosing the location, as case law does not require an examination of empirical data underlying any considered traffic analysis. *See generally State v. Bates*, 1995-NMCA-080, ¶ 11, 120 N.M. 457, 902 P.2d 1060 (providing that specific, empirical data is not required to support the reasonableness of the roadblock, and instead relying on the officer's general testimony that the choice of location was based on traffic analysis indicating a number of alcohol related accidents in the general vicinity and that the location was a frequently traveled thoroughfare with alcohol related problems).  In sum, because the traffic-related statistics gathered by the Resource Center indicated that the selected location had a higher concentration of alcohol-related accidents than other locations in the city [RP 75], we conclude that the chosen location was reasonably efficacious. [MIO 10]

{6}　　We next address Defendant's continued challenge to the roadblock's safety. [DS 7; MIO 10] As set forth in our notice, Sergeant McDonald testified that the first sign relating to the checkpoint was at an intersection approximately 200  yards from the entry to the checkpoint, and read "Reduced Speed Ahead." [RP 82] After another hundred yards, another sign read "Sobriety Checkpoint Ahead."  [RP 82] To prevent dangerous lane changes, officers placed orange cones between the two lanes. [RP 82-

4

83] The shoulder of the road, which eventually became a right turn lane, was blocked with orange barrels and marked police department vehicles. [RP 83] We agree with the district court that these measures permitted drivers to anticipate the checkpoint, slow down, and move safely through the checkpoint. While Defendant questions the efficacy of the reduced speed signs [MIO 10] and the placement of the cones [MIO 11], we are satisfied that the roadblock was safely implemented.

{7}    Based on our notice and the foregoing discussion, we conclude that the checkpoint satisfied the *Betancourt* factors for location and safety.  And in so concluding, we are satisfied that the roadblock was set up so as "to ensure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Betancourt*, 1987-NMCA-039, ¶ 6.  We accordingly affirm.

{8}    **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**

5

_____

**CYNTHIA A. FRY, Judge**